## Henry H. Pond v. Royal League et al.

### Gen. No. 12,572.

1. CORPORATION—*what powers can be exercised by.* A corporation can only exercise those powers expressly granted by the legislature and those further powers which are incidental to the exercise of the powers so expressly conferred.

2. FRATERNAL BENEFIT SOCIETY—*cannot create life members of governing body.* A fraternal benefit society has no power to fix the term of the office of a manager beyond that prescribed by statute.

3. FRATERNAL BENEFIT SOCIETY—*rights of charter members under.* Charter members of a fraternal benefit society have no rights not common to other members.

Injunctional proceeding. Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed June 26, 1906.

MILLARD R. POWERS and HIRAM T. GILBERT, for appellant.

MANN & MILLER, for appellees.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

Appellant filed the bill in this case against appellees praying that they be enjoined from attempting to amend or alter the charter of appellee, Royal League, or to inter-

fere in any manner with any rights, interests or privileges which were acquired by appellant and his associates, through their mutual insurance contract and the charter of said Royal League.

The case made by the bill is briefly stated as follows:

"Appellant and ten associates (who are named in the bill) on or about October 11, 1883, entered into a contract, each with the other, for the purpose of insuring their respective lives, and those of other persons, upon a mutual plan. In order to facilitate such enterprise, and as a matter of convenience in the transaction of the business, appellant and associates made an application for a charter, on October 12, 1883, pursuant to sections twenty-nine, thirty and thirty-one, of chapter thirty-two, Revised Statutes of Illinois; and in such application stated the name and objects of the corporation, and that the management of the proposed corporation should be vested in a Supreme Council, or governing board, composed of fourteen persons who were members of the proposed society, and such representatives as might be elected by Advisory Councils, organized under the direction and control of such society and its officers in the manner provided in the by-laws thereof. It was further provided that appellant and his associates should be the managers, and should control and manage said society for the first year of its corporate existence, and until their successors should be chosen; and that each and all said persons were life members of said Supreme Council or governing board, and should remain members thereof, so long as they, respectively, should be in good standing in the society.

Upon presentation of such application to the Secretary of State, that official duly issued a certificate of the organization of said society on October 26, 1883, making a part thereof a copy of such application; all which were duly recorded in the Recorder's office of Cook county. Appellant and associates then and thereby contracted, each with the other, and with the State of Illinois, for the acquisition, management and disbursement of money for their several

benefits, and the benefits of their several beneficiaries after death, and for persons who are constantly changing because of admissions to membership, suspensions and death, though the objects for which such society was formed and incorporated remain the same, and may remain without limit of time.

After such incorporation, appellant and associates accepted the offices as managers, adopted a code of by-laws, elected officers, and individually advanced considerable sums of money for the purposes of the society, which have never been repaid to any of them, and performed services, solicited accessions to the membership, and in other respects complied with, performed and acted in good faith in relation to their several and joint obligations under their agreement, and as members of the Supreme Council of said society. As a part of their said contract, each of said persons thereby and therein insured their respective lives for the sum of $4,000, and agreed to pay, respectively, sums of money from time to time into the several funds of said society, in order that it might defray current expenses and pay mortuary obligations, as the same should mature.

That as a result of said contract, incorporation and plan for said enterprise, there are now more than twenty-six thousand members in said society, more than four millions of dollars have been paid to beneficiaries of members whose lives, like appellant's and associates, were insured in said society, more than eight hundred thousand dollars has been accumulated as a mortuary reserve fund, and more than eighty thousand dollars is annually collected and disbursed for and from the general fund of said society on account of the expenses and management thereof.

Seven of said persons so contracting and mentioned in said articles of incorporation are living and are in good standing, and by reason of said contract, incorporation and insurance, the membership of said persons and appellant, in said Supreme Council, are of great financial value to said persons and appellant, as a means for the protection of their

several interests in said society, whereby said persons and appellant are able to attend the sessions of said Supreme Council and participate in the deliberations and legislation affecting each of their said interests and contracts, and the interests and contracts of those who have been induced by appellant and others to become members of said society and contribute to the funds thereof.

At a meeting of the Supreme Council, or governing board of said society, held on April 11 and 12, 1905, and during the absence therefrom of all of said contractors, except two, and without notice to any thereof that an attempt would be made to so amend the charter so as to terminate the rights of said contracting persons to be and remain members of said Supreme Council during the good stand-ing and life of each, a resolution was presented and vote taken, in which said two contractors and others voted in the negative; whereupon the resolution was declared passed. The resolution was without preamble or other statement purporting to show what object was to be attained, or the use to be made thereof, and was in the following language :

·' Resolved, that the management of this corporation, now known as the Royal League, shall hereafter be vested in its Supreme Council, which shall be composed of its officers and of such representatives as may be elected by Advisory Councils organized under the direction and con-trol of said Supreme Council, in the manner as provided in the Constitution and Laws of the Order; and *from and after the date of the adoption of this resolution there shall be no such thing as life members of said Supreme Council.'*

No other resolution, motion or corporate action was adopted, passed or taken, authorizing the making of said resolution a part of the charter of said society by amend-ment or otherwise, notwithstanding the entire absence of authority from said contractors, and that no such corporate action was taken as showed that the Supreme Council in-tended, by the use of said resolution, to in any manner amend said charter, the Supreme Archon, William E. Hyde, and Supreme Scribe, Charles E. Piper, prepared a certificate

embodying said resolution, and on April 20, 1905, obtained the approval of the same by the Insurance Superintendent of Illinois, and thereafter filed it with the Secretary of State, and unless enjoined, said Hyde and Piper, or their agents, may file a certified copy thereof with the Recorder of Deeds of Cook County, and thereafter claim that said charter has been thereby amended in the manner and for the purpose aforesaid.

During said session of the Supreme Council the Constitution thereof was amended so as to prohibit all said charter members, and Robert S. Iles, Charles C. Linthicum and L. L. Morrison, who are Past-Supreme Archons, from thereafter attending the Supreme Council sessions, and voting upon any legislation that may be under consideration, or voting at the election of officers of said Royal League.

Said Hyde and Piper have been charged with repeated misappropriations of the moneys of said Royal League, and their acts have not been approved by said charter members and Past-Supreme officers, but on the contrary, have been severely criticised by some of said persons; and by removing said persons from the membership of said Supreme Council, said Hyde and Piper hope to be freed from the opposition of said persons and to be able to continue in office and in the management of the funds of said Royal League."

Appellees filed a general demurrer to the bill. The Circuit Court denied the motion for an injunction, sustained the demurrer and dismissed the bill for want of equity at appellant's costs.

The case made by the bill turns entirely upon the question whether the provision of the contract between appellant and his ten associates, embodied in the application for incorporation of the Royal League, providing that they should be life members of the supreme council or governing board, was valid or not, as a provision of the charter, except in so far as it gave them the governing power for the first year of the existence of the corporation.

If the so-called contract alleged to have been entered

Pond v. Royal League.

into between appellant and his associates may be called a contract as between the parties to it, under the averments of the bill, before it was incorporated into the statement for incorporation, when it was so incorporated on October 12, 1883, it became a part of the "certificate in writing" provided for in the statute (R. S. sec. 29, chapter 32), and had and could have thereafter no other force and effect than the statute gave to it as a preliminary step in the organization of the appellee Royal League. Its function as a contract between the parties to it ceased, for its purpose, as far as that purpose was legal, was accomplished upon the complete organization of the corporation which was intended to be formed. The contention of appellant therefore in the case as made by the bill cannot be considered as having reference to a private contract between the parties to it, but it must be considered as a contention with reference to appellant's rights as a member of the corporation which they formed and of which they constituted the governing board for the statutory period of one year.

The authority and power of appellant and his associates in their steps to organize the appellee, Royal League, is found in the sections of the general incorporation act above referred to, and not elsewhere or in any contract made by them. The legislature by the constitution of 1870 was given the power to pass a general incorporation act, and private individuals have no right or power to modify or enlarge the provisions of the incorporation act passed in pursuance of the authority so conferred upon the legislature. The rule of construction in such cases is that only those powers can be exercised as are expressly granted by the legislature, and that every power or privilege not clearly granted is withheld.

In The American Loan & Trust Co. v. Minnesota & Northwestern R. Co., 157 Ill. 641, the court was called upon to construe the several statutes under which several railroad companies were organized and consolidated, and stated the canon of construction of the several statutory provisions relied upon as authority for what had been done as follows:

" The rule of construction applicable to the several statutory provisions that have been mentioned is, that every power that is not clearly granted is withheld, and that any ambiguity in the terms of the grants must operate against the corporations and in favor of the public. (Black v. Delaware & R. C. Co., 24 N. J. Eq. 455.) So the conclusion must be that in 1882 railroad corporations organized under the laws of Illinois had no authority whatever, unless granted in their respective special charters, to consolidate with railroad companies of other states."

In discussing the powers conferred on the Canton Masonic Mutual Benevolent Society in Rockhold v. Canton Masonic Benev. Society, 129 Ill. 440, the court say:

"Appellee assumes to be incorporated under and by virtue of the provisions of sections 29, 30 and 31 of chapter 32 of the Revised Statutes of 1874, which provide for the creation of 'corporations not for pecuniary profit.' 'The particular business and objects' of the corporation, as declared in the certificate of the promoters filed in the office of the secretary of state, are 'to give financial aid and benefit to the widows, orphans and heirs or devisees of deceased members', and the certificate of incorporation is a license only for 'the particular business and objects' enumerated in the certificate of the promoters. (See statute *ubi supra*.) The only difference that occurs to us, between a corporation organized under a general law and one created by a special statute, material to be here considered, is, that in the former we look to the certificate of the promoters, while in the latter we look to the special statute, to ascertain the scope of the powers of the corporation. The rule for construing the instruments must necessarily be the same, namely, the powers specifially enumerated, and such other powers as are incidental or necessary to carry those powers into effect, but none others, may be exercised by the corporation," and citing authorities.

It is clear, we think, from these authorities and others which might be cited, that the power and authority of the incorporators is limited by the statute under which they organized the corporation. Any act in excess of the power

delegated in and by the statute was void.    Any provision in the "certificate in writing" not authorized by the statute, or incidental or necessary to carry into effect the provisions of the statute, is likewise without authority and void.    The attempt to name managers who should continue to act as such for a period beyond that fixed by the statute was contrary to the statute, and therefore void.

In People v. Gas Trust Co., 130 Ill. 268, the court discussed the effect of a clause inserted in the application for incorporation providing for purchasing and holding stock in other corporations which was not authorized by the statute, and also the effect of embodying that application in the charter.    The court said: "Can a corporation organized under that law be clothed with such a power by merely naming it in the statement filed with the Secretary of State?    We think not.    The action of the Secretary of State in issuing the license and the certificate of organization is necessarily, to a large extent, merely ministerial."

Further on in the same opinion after stating that erecting gas works and making and selling gas was the purpose for which the appellee was formed, the court say: "Viewing that as the main purpose for which appellee was formed, the incorporators could not tack on and connect with such main purpose the power to buy and hold stock in other gas companies by merely describing such power in the statement.    To hold that they could confer such power by writing it down in the statement, would be to hold that the General Assembly could clothe them with a part of its legislative functions.

"When a corporation is formed under the General Incorporation Act for the purpose of carrying on a lawful business, the law, and not the statement, or the license, or the certificate, must determine what powers can be exercised as incidents to such business."

It follows, therefore, that the clause in the certificate making appellant and others life members of the governing body of appellee, Royal League, was not authorized by the law.    It must be rejected as surplusage and held to be no part of its charter.

Section 34 of the General Incorporation Act under which appellee, Royal League, was organized, provided that any such corporation might change its articles of association in the manner prescribed by its own rules. Section 9 of the act reserves to the legislature the power of making future regulations and provisions concerning corporations which shall be binding on all corporations formed under the act.

In 1893 the legislature passed what is known as the Fraternal Beneficiary Societies Act, which appears as a part of chapter 73 Starr & Curtis's Ill. Statutes. This act, as originally passed, did not authorize changes in the articles of association. In 1897 the legislature added a section authorizing changes in the articles of association. Starr & Curtis, An. Statutes, Vol. 4, p. 730. So that the general act under which appellee was organized, and the fraternal beneficiary act under which it may be said it is now doing business, authorize the amendment to the charter.

These statutes form a part of the charter of appellee. Baldwin v. Begley, 185 Ill. 180; Alexander v. Parker, 144 id. 355; Wallace v. Madden, 168 id. 356; People v. Gas Trust Co., *supra*. Charter members of the Royal League, appellee, have no rights not common to other members. Appellant and his associates, when they filed their application for the charter, voluntarily submitted themselves to the laws of the state governing the organization and control of such corporations, and when the charter was issued and accepted by them it was taken subject to the statutes which formed a part of the charter. Park v. Modern Woodmen, 181 Ill. 231. Among the provisions of the charter thus accepted by appellant was the provision that the charter might be amended without their consent.

These considerations, supported by numerous authorities, and by principles too fundamental to be questioned at this time, seem to us to leave no foundation for the bill to rest upon.

We find no error in the decree and it is accordingly affirmed.

*Affirmed.*