## HENRY BALDWIN

*v.*

### ELLEN E. BEGLEY *et al.*

*Opinion filed April 17, 1900.*

1. BENEFIT SOCIETIES—*effect of agreement to obey laws in force or subsequently enacted.* An agreement by a member of a benefit society to obey all by-laws in force or subsequently enacted by the society subjects the member and his beneficiary to the operation of a subsequent by-law, passed to carry into force the provisions of a statute, restricting payments of insurance to the family of the member, his heirs, blood relations, affianced wife or persons dependent upon him. (*Voigt* v. *Kersten,* 164 Ill. 314, distinguished.)

2. SAME—*heirs take insurance where beneficiary is ineligible.* Heirs-at-law of a member of a benefit society are entitled to the insurance, where the person designated as beneficiary is outside the classes of persons capable of taking under the laws of the society.

*Baldwin* v. *Begley,* 84 Ill. App. 674, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

This is a bill of interpleader, filed on October 7, 1897, by the High Court of the Independent Order of Foresters of the State of Illinois, one of the appellees herein, for the purpose of determining the rightful claimant to an insurance fund of $1000.00, due from said order upon the death of one William G. Turner. The defendants to the bill were the appellees, Ellen E. Begley and Ella Veronica Hinchey, and the appellant, Henry Baldwin, a nephew of William G. Turner, deceased, and certain other persons who were the nephews and nieces of said Turner. The only contest in the case is between the appellant, Henry Baldwin, and the appellee, Ellen E. Begley, each claiming said fund of $1000.00. Answers were filed to the bill by the appellee, Ellen E. Begley, and by the appellant, Henry Baldwin, and the other nephews and nieces of

Turner; and an answer was also filed for Ella Veronica Hinchey, a minor, by her guardian *ad litem*, J. C. Porter. It was shown by the proof, and is conceded, that all the other nephews and nieces of Turner, except Henry Baldwin, assigned whatever interest they had to the fund in question to the appellant, Henry Baldwin.

On July 18, 1898, after hearing had, the superior court of Cook county rendered a decree, finding that the appellee, Ellen E. Begley, was entitled to the fund, and that the other parties had no interest therein, and decreeing that the complainant below, said Independent Order of Foresters, should pay to Ellen E. Begley the said sum of $1000.00, less costs of suit, etc. From this decree an appeal was taken to the Appellate Court. The Appellate Court has affirmed the decree of the superior court, and the present appeal is prosecuted from the judgment of affirmance so entered by the Appellate Court.

The facts disclosed by the pleadings and decree are as follows: The appellee, the High Court of the Independent Order of Foresters, is a fraternal beneficiary society, organized under the laws of Illinois on or about February 1, 1882, under the act "concerning corporations," approved April 18, 1872, in force July 1, 1872, as amended by the act of March 28, 1874, concerning "corporations not for pecuniary profit." (1 Starr & Curt. Stat.—2d ed.— pp. 988, 1020, 1021; Public Laws of Ill. 1871-72, p. 96; id. 1873-74, p. 74). On January 30, 1885, the said William G. Turner signed a written application for membership in said society, which application made among others the following statements, to-wit: "I direct that, in case of my decease, all benefit to which I may be entitled from the Independent Order of Foresters of the State of Illinois be paid to Mrs. Mary Turner, related to me as wife, subject to such future disposal of the benefit to my widow, orphans, heirs or devisees as I may hereafter direct, in compliance with the laws of the order. * * * I agree to make punctual payments of all dues and as-

sessments for which I may become liable, and to conform in all respects to the laws, rules, and usages of the order now in force, or which may hereafter be adopted by the same."

Attached to the said application was a written obligation signed by the said Turner, which contained among others the following promise, to-wit: "I do of my own free will and accord, most solemnly promise that I will strictly comply with all laws, rules, and usages of this fraternity established by the High Court of the Independent Order of Foresters of the State of Illinois."

In pursuance of said application and obligation, and on June 22, 1885, said society or order issued to said William G. Turner an endowment certificate for $1000.00, payable on his death to his wife, Mary Turner, which certificate was accepted and signed by him, and was as follows:

"This certificate is issued to William G. Turner, a member of Court Enterprise No. 36, I. O. F. of Illinois, upon condition that the statements made by him in his application for membership in said court, and the statements certified by him to the medical examiner, be and they are hereby made a part of this contract, and upon condition that the said member complies in the future with the laws, rules and regulations now governing the said order or that may hereafter be enacted by said high court. These conditions being complied with the said high court of the I. O. F. of Illinois hereby promises and binds itself to pay to Mary Turner, his wife, one thousand dollars upon satisfactory evidence of the death of said member and upon the surrender of this certificate, provided that said member is in good standing in this order at the time of his death, and provided also, that this certificate shall not have been surrendered by said member and another certificate issued at his request, in accordance with the laws of this order.

"In witness whereof the High Court of the Independent Order of Foresters of the State of Illinois has hereunto affixed its seal, and caused this certificate to be signed by its high chief ranger, and attested and recorded by its high secretary at Chicago, Ill., this 22d day of June, A. D. 1885.

R. M. OLIVER, *High Chief Ranger.*"

On March 6, 1895, said Mary Turner died, the said certificate being then still standing in her name, and payable to her.    On April 1, 1895, William G. Turner endorsed on the back of said certificate a surrender thereof, and returned it to the high court of said order, and directed that a new certificate should be issued to him, payable to Ella Veronica Hinchey, "related to him as niece."

On May 18, 1897, William G. Turner made and signed an affidavit, swearing that the certificate issued to him for $1000.00, payable to Ella Veronica Hinchey, his niece, had been either lost or destroyed, and petitioning for the issue of another certificate, to be made payable to Ellen E. Begley, "related to him as niece."

On May 20, 1897, Turner executed a codicil to his will, which will was dated May 17, 1897, and by said codicil bequeathed said sum of $1000.00 to Ellen E. Begley, daughter of Michael J. Begley.

On May 26, 1897, William G. Turner died, a member of said order in good standing, and his will and codicil were duly admitted to probate in the probate court of Cook county.    On May 28, 1897, two days after Turner's death, said society made and executed an endowment certificate, in pursuance of his petition presented on May 18, 1897, which certificate was payable to the appellee, Ellen E. Begley.

It was found by the court below, and is not denied that neither Ella Veronica Hinchey nor Ellen E. Begley was a niece of William G. Turner, or otherwise related to him, but that both of them were nieces of his wife. Neither of them was a member of his family, or his affianced wife, or a person dependent upon him.

On January 30, 1885, when Turner made the application above referred to, and on June 22, 1885, when the first endowment certificate was issued to him, payable to his wife, Mary Turner, the laws, rules, and regulations of the society provided as follows: "1. The endowment benefit of this order shall be $1000.00.    3. On the death

of a member of this order in good standing, the endowment shall be paid: First, to such persons as he may designate in his last will and testament or endowment certificate; second, to his widow; third, to his orphans; fourth, to his heirs."

The laws, rules, and regulations of said order duly enacted in August, 1894, by the high court of the order at its regular annual meeting, and which were in force from and after January 1, 1895, until the death of said Turner, provided as follows: "Payments of death benefits shall only be made to the families, heirs, blood relations, affianced wife of, or to persons dependent upon the member; and such benefits shall not be willed, assigned or otherwise transferred to any other person. This endowment law shall go into full force and effect on January 1, 1895."

"All members in good standing under the old endowment law on January 1, 1895, shall without further examination become members of the second, or one thousand ($1000.00) endowment class, under the new endowment law. * * * The old endowment law, as now in force, shall be the law and guide for the payment and collection of assessments and payment of death claims, until December 31, 1894, in all subordinate courts, such accounts to be continued in the old account books of the subordinate courts and high court, but on and after January 1, 1895, new and separate accounts shall be opened with the members of such subordinate courts, in such books as may be adopted by the high board of directors, and new and separate accounts be opened for such courts in the high court."

JAMES F. CRAHEN, (SAMUEL ADAMS, of counsel,) for appellant.

KEENAN & HEAP, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

On April 1, 1895, when the deceased William G. Turner surrendered the certificate theretofore issued on June 22, 1885, to his wife, Mary Turner, and petitioned for the issuance of a new certificate to Ella Veronica Hinchey, and on May 18, 1897, when he made affidavit as to the loss of said last named certificate, and requested the issuance of a new certificate to Ellen E. Begley, and on May 20, 1897, when, in the codicil of his will, he bequeathed the $1000.00 due him from said order, to Ellen E. Begley, the act of the legislature of Illinois, of June 22, 1893, in regard to fraternal beneficiary societies, was in force. Section 1 of the latter act provides that "payment of death benefits shall only be made to the families, heirs, blood relations, affianced husband or affianced wife of, or to persons dependent upon, the member; and such benefits shall not be willed, assigned or otherwise transferred to any other person." (Laws of Ill. 1893, p. 130). At these dates, also, there was in force a law or rule of said order, framed in the language of section 1 of the act of 1893, as above set forth. The laws, rules, and regulations of the order enacted in August, 1894, as they are set forth in the statement preceding this opinion, were in force in 1895 and 1897. It is clear, therefore, that the application for the issuance of an endowment certificate to the appellee, Ellen E. Begley, or the bequeathing of the same to her in the codicil of the will, and the issuance of a certificate payable to her after the death of Turner, were not in accordance with the act of 1893, or with the laws, rules and regulations of the order adopted after the passage of that act. By the terms of said act and of said laws, rules, and regulations, payments of death benefits can only be made to the families, heirs, blood relations, and affianced wife of, or persons dependent upon the member of the society; and such benefits cannot be willed, assigned or otherwise transferred to

any other person.　Ellen E. Begley was a niece of Mrs. Mary Turner, the deceased wife of William G. Turner, and did not belong to the family of Turner himself, nor was she his affianced wife, or a person dependent upon him, or an heir, or blood relation of his.　Hence, the cer-. tificate to her was issued to the wrong person, and the bequest made to her in the will was made to the wrong person under the statutory law then in force, and under the laws, rules and regulations of the order then existing. It would seem to follow, therefore, that the decree of the trial court, which ordered the endowment fund to be paid to the appellee, Ellen E. Begley, was erroneous.

It is, however, claimed on the part of the appellee, Begley, that, in 1885 when Turner made his application to become a member of the society, and signed his obligation to comply with its laws and rules, and obtained the issuance of the original endowment certificate payable to his wife, Mary Turner, the act of the legislature of Illinois of June 18, 1883, providing for the organization of societies for the purpose of furnishing life indemnity or pecuniary benefits to widows, orphans, heirs, relatives, and devisees of deceased members, was in force.　Section 1 of the latter act provides "that corporations, associations or societies for the purpose of furnishing life indemnity or pecuniary benefits to the widows, orphans, heirs or relatives by consanguinity or affinity, devisees or legatees of deceased members,　*　*　*　and where members shall receive no money as profit, and where the funds for the payment of such benefits shall be secured, in whole or in part, by assessment upon the surviving members, may be organized," subject to the conditions named in the act.　(1 Starr & Curt. Ann. Stat.—1st ed.—p. 1348). It is also said that, in January and June, 1885, there were in force the laws, rules, and regulations of the order, which provided that, on the death of a member in good standing, the endowment should be paid: First, to such persons as he might designate in his last will and tes-

tament or endowment certificate; second, to his widow; third, to his orphans; fourth, to his heirs. The position of the appellee, Begley, is, that, under the act of 1883, she being the niece of Mrs. Turner, was a relative of Turner's by affinity, and was a devisee or legatee of the endowment fund under his will; and that by the terms of the laws, rules, and regulations of the order in force in 1885, she was a person designated in his last will and testament and also in the endowment certificate issued on May 28, 1897.

The statute of 1883 is alleged to have become a part of the organic law of the society, and, therefore, as alleged, a part of Turner's contract as if it were written into the contract. Undoubtedly, the contract between the benefit society and its members is contained in the certificate, (when the certificate is issued), taken in connection with the constitution and by-laws of the order and the statute of the State under which it is formed. (*Alexander* v. *Parker*, 144 Ill. 355; *Wallace* v. *Madden*, 168 id. 356). It is, therefore, argued that, under the act of 1883, the society had no right to change the class of beneficiaries, by any law, rule or regulation that it might make, to whom Turner might choose to have an endowment certificate issued. When he joined the order in 1885 and procured the issuance of the first certificate payable to his wife, the object, for which the society was organized, as recited in its constitution and by-laws, was to secure pecuniary aid for the widows, orphans, heirs, and devisees of deceased members of the order. It is claimed, that his right to designate a devisee as a benficiary was a vested right, which could not be taken from him by the subsequent statute passed in 1893, or by the subsequent by-laws adopted in August, 1894. This position is unquestionably sound, if there was nothing in his contract with the society which obliged him to be bound, in the matter of designating a beneficiary, by such laws, rules, and regulations as the society should subsequently adopt.

Counsel for the appellee, Begley, refer to and rely upon the case of *Voigt* v. *Kersten*, 164 Ill. 314, in support of their contention upon this subject. In the *Voigt case*, Voigt, who was named in the certificate, claimed that under the act of June 22, 1893, the right of the deceased to name another beneficiary than himself, was restricted to one of the class of persons included within the terms of the act, while Kersten contended that the contract between the deceased and the order was such that the deceased had the right to change the beneficiary at any time that he saw fit, so long as he complied with the terms of the contract on his part to be performed; and that such right was not and could not be affected by a change in the statute made subsequent to the contract. It was held in that case, that the right to make this change was one of the considerations entering into the contract when the deceased obtained his certificate, and that it was a material right which could not be taken away by the legislature. The doctrine, as thus laid down, is unquestionably correct. A vested right, acquired under a contract made in pursuance of one statute, cannot be impaired by a subsequent statute. When a contract is made, a right is vested in each party to have it remain unaltered and to have it performed. But, as we understand the record, the appellant here claims nothing under the act of 1893, or under any other statute. The question here is not whether the contract made with the benefit society by Turner in 1885 can be changed by a subsequent statute, but whether the contract then made by him can be enforced or not.

A party cannot claim the right to have a contract remain unaltered when the contract itself provides that it may be changed. Here, Turner agreed in his application made in 1885 that he would "conform in all respects to the laws, rules and usages of the order now in force, or which may hereafter be adopted by the same." In the certificate issued to him on June 22, 1885, the condition

was imposed "that the said member complies in the future with the laws, rules, and regulations now governing the said order, or that may hereafter be enacted by said high court." It thus appears, by the terms of Turner's contract with the benefit society, that he agreed to comply with such laws, rules, and regulations, as might be enacted by the high court of the society in the future. No such contract as this was involved or brought to the attention of the court in the *Voigt case.* The law or rule of the society, which was adopted in August, 1894, and which went into effect on January 1, 1895, and which provided that the payment of death benefits should only be made to the families, blood relations, heirs, affianced wife of, or to persons dependent on the member, and that such benefit should not be willed, assigned or transferred to any other person, comes within the terms of the contract made by Turner, and cannot be otherwise regarded than as one of those future laws or rules with which he agreed to comply. The new by-law of the order, which thus restricts the beneficiaries to the same classes as those designated by the act of 1893, unquestionably follows the terms of the latter act, and was passed in accordance with the policy of the legislature as therein indicated. But the mere fact that the terms of the by-law correspond with the terms of the statute, does not make it any the less such a future by-law as the contract contemplated.

In *Supreme Lodge Knights of Pythias* v. *Kutscher,* 179 Ill. 340, we have recently held, that a by-law forfeiting claims for the death of a member of a benefit society, where the death of the member has resulted from suicide, binds a member joining the society before the passage of such by-law, when his contract requires compliance with by-laws "now in force or hereafter to be enacted."

In *Supreme Lodge Knights of Pythias* v. *Trebbe,* 179 Ill. 348, it was held that the enactment of a law by the supreme lodge of a benefit society, which provides for the

forfeiture of an endowment certificate upon the death of
a member by suicide, binds a member whose contract re-
quires compliance with all laws "now in force" or "here-
after enacted by the supreme lodge."

Again, in *Fullenwider* v. *Royal League,* 180 Ill. 621, the
same doctrine was laid down. In the latter case, we said
(p. 625): "The power to enact by-laws for the government
of a corporate body is an incident to the existence of a
body corporate and is inherent in it. The power to make
such changes as may be deemed advisable is a continu-
ous one. Where the contract contains an express provi-
sion reserving the right to amend or change by-laws, it
cannot be doubted that the society has the right so to
do, and where, in a certificate of membership, it is pro-
vided that members shall be bound by the rules and regu-
lations now governing the council and fund, or that may
thereafter be enacted for such government, and those
conditions are assented to, and the member accepts the
certificate under the conditions provided therein, it is a
sufficient reservation of the right in the society to amend
or change its by-laws. * * * The contract requiring
compliance with any by-laws that might be thereafter
enacted, and the certificate being accepted with such a
clause therein, there is no vested right of having the
contract in the certificate remain unchanged, because the
recognition of the power to make new by-laws is neces-
sarily a recognition of the right to repeal or amend those
theretofore made."

Inasmuch, therefore, as Turner in his contract with
the society agreed to be bound by such laws as should
thereafter be enacted by it, and inasmuch as the society
did thereafter enact a new by-law naming different per-
sons who should be designated as beneficiaries, and in-
asmuch as, in his last application for a certificate, Turner
did not designate as a beneficiary a person belonging to
any of the classes named in the new by-law and procured
a certificate to be issued to the appellee, Begley, a person

who did not belong to any of such classes, such application and certificate must be regarded as void. It follows that the appellee, Begley, cannot take the fund in controversy.

Accordingly, the appellant is entitled to the fund in his own right, and as assignee of the nephews and nieces of Turner, his blood relations. Upon the death of a member, where the person claiming to be his designated beneficiary is outside of the classes eligible as beneficiaries of his insurance, the member's heirs-at-law, who are within such classes, are entitled to the insurance. There being no selection of a beneficiary authorized to take, the fund goes to them. (*Palmer* v. *Welch*, 132 Ill. 141; *Alexander* v. *Parker*, 144 id. 355).

The judgment of the Appellate Court and the decree of the superior court of Cook county are reversed, and the cause is remanded to the latter court with directions to enter a decree requiring the fund to be paid to the appellant herein.                *Reversed and remanded.*