ANNA SPENGLER

*v.*

CHARLES SPENGLER et al.

[Filed June 23d, 1903.]

A benefit certificate provided that the member might, in writing, surrender all claim thereto and direct that a new certificate be issued to him, payable to the same or other beneficiary; * * * "the issuing of such new certificate shall cancel and render null and void any and all previous certificates issued to such member."—*Held*, that the mere delivery of the original certificate to the member's wife, who was the beneficiary named therein, did not enlarge her interest, such interest still continuing to be an expectancy dependent on the will of the member.—*Held, further*, that payments made by her after such delivery did not enlarge her right, for they were made on a contract; one of whose terms was that it was subject to change at the member's will.—*Held, further*, that the wife was not entitled to have the premiums returned to her.

*Mr. Julius Rupprecht* and *Mr. Thomas Anderson,* for the complainant.

*Mr. Harry Osborne,* for the defendants.

STEVENS, V. C.

Contrary to my first impressions, based upon an erroneous idea that under the benefit certificate issued August 13th, 1894, there had been acquired a vested right such as was held to exist in *Locomotive Association* v. *Winterstein, 13 Dick. Ch. Rep. 189,* and such as may arise under an ordinary life insurance policy

(*Brown* v. *Murray, 9 Dick. Ch. Rep. 594*), I have come to the conclusion that that certificate has been annulled and that the certificate issued November 15th, 1901, payable jointly to complainant and the three children of Adolph Spengler, is the one now in force. The adjudicated cases in this state appear to me to show this beyond question. In *Golden Star Fraternity* v. *Martin, 30 Vr. 207*, it is said by the court of errors: "The beneficiary may be changed by the mere will of the member and without the beneficiary's consent. In such case the right of the beneficiary is not property, but a mere possibility or expectancy dependent on the will of the member to whom the certificate is issued. For this reason the beneficiary's interest in the certificate and contract evidenced thereby differs totally from the interest of a beneficiary named in an ordinary life insurance policy containing no provision for the designation of a new beneficiary."

The contract contained in the certificate upon which complainant bases her claim reads as follows:

"And said Supreme Lodge hereby agrees to pay * * * [to complainant] the sum of $1,000, in accordance with and under the laws governing this order, upon satisfactory evidence by the beneficiaries of the death of said member and * * * upon the surrender of this certificate; provided, that this certificate shall not have been surrendered by said member or canceled at his request and another certificate issued in accordance with the laws of the order."

The second section of article 9 of the constitution of the order provides that

"if the benefit certificate of a member be lost or beyond his control, the member may, in writing, surrender all claim thereto and direct that a new certificate be issued to him, payable to the same or other beneficiary, in accordance with the laws of this order. * * * The issuing of such new benefit certificate shall cancel and render null and void any and all previous certificates issued to such member."

Adolph Spengler, shortly before his death, made affidavit of the loss of the certificate issued in 1894 and complied with the other regulations of the constitution. Thereupon, the lodge issued the new certificate, attacked by the complainant's bill.

12

It must be conceded that as between the new beneficiaries and the company the legal right of recovery is complete. It is said, however, that as between them and the complainant the case is different; that the prior certificate was given to complainant by her husband in the year 1894, shortly after her marriage, and that upon the strength of that gift she paid the premiums up to the time of her husband's death. The testimony of complainant's daughter is that in August, 1894, her stepfather handed the certificate to her mother and said:

"Anna, I make you a present of this paper. It is yours. Do with it what you please. I have no money to keep it up, so you pay it if you choose."

The proof is that this certificate had itself been substituted for a prior certificate on which Adolph had paid the premiums from the year 1882. Now, if the certificate asserted to have been given to the complainant was, in terms, payable to her, its mere delivery did not change the right. In *Landrum* v. *Knowles, 7 C. E. Gr. 594,* Chief-Justice Beasley, speaking of an ordinary life insurance policy, says: "The interest in this policy was effectually transferred to these appellants, for, by its very terms, it is made payable to them, and it is difficult to perceive what ceremony or fact is wanting to the perfection of the gift to them." So here the certificate being made payable to complainant, her custody of the paper was not improper, while she continued to be the sole beneficiary. The delivery to her was in accord with her expectancy. But what did she get by the so-called gift? Evidently the contract as it was embodied in the paper itself—"the expectancy dependent on the will of the member." But there is this obvious distinction to be kept in mind. As between the member and the lodge, the contract embodied in the certificate continues to be the contract until varied in some lawful way by mutual consent. But there seems to be no reason why the member may not, by contract founded on valuable consideration, effectually assign his certificate to one or more of the class of persons whom he may, under the laws governing the lodge, designate to it as beneficiary, and why, in favor of such person, he may not covenant to make no new desig-

Spengler *v.* Spengler.

nation. If he does so assign, as between him and the assignee, the assignments may be valid and enforceable—it may prevail as against any subsequent voluntary beneficiary named by him. It is on this distinction that such cases as *Smith* v. *National Benefit Society, 123 N. Y. 85,* appear to be founded.

In the case in hand the question, then, is, may the so-called gift be deemed to possess the elements of a binding contract? Does the evidence warrant the inference of an agreement of this sort: "If you pay the premiums up to the time of my death, the money due on the certificate is yours absolutely?" Does it show payments made on the faith of this promise? It may be doubtful whether it does, but if it does there is this fatal defect in it. It appears to have been a contract made on Sunday, and under the well-settled course of decision in this state, absolutely void. *Gennert* v. *Wuestner, 8 Dick. Ch. Rep. 302; Reeves* v. *Butcher, 2 Vr. 224; Cannon* v. *Ryan, 20 Vr. 314.*

The case, then, is this: Mrs. Spengler pays on an expectancy dependent on the will of the member. The certificate, of which she has possession, itself so declares. She pays on a contract which expressly reserves to the member the right to make a new designation. She has notice that her husband may at any time change the beneficiary, and she has no lawful agreement binding him not to do so. If he does what he has a right to do and what she knows he has a right to do, I do not see how, in a legal sense, she can complain. Her payments are referable to the papers as we find it, and to nothing else.

It is said, however, that the change was effected by fraud; that Adolph Spengler made an affidavit that the policy was lost and that this was false, to his knowledge. I do not think the evidence justifies the inference that he knowingly asserted a falsehood. The delivery of the certificate to his wife occurred seven years before. He may easily have forgotten it. The clause I have quoted from the ninth article uses the language: "Lost or *beyond his control.*" He could just as easily and with perfect truth have sworn to the latter of these alternatives. By the language of the article the legality of the issuance of a new certificate is made to depend upon the *fact* of loss or want of control, and not upon an evidence of the fact. The new certifi-

cate was issued, and its issue is warranted by the undisputed fact that it was beyond his control. Besides, the fraud, if any, was perpetrated upon the association, and it does not object to pay.

The final contention is that Mrs. Spengler is entitled to a return of the premiums paid before there is any division of the money between herself and the other beneficiaries. If the beneficiary first named pays premiums after the original certificate has been canceled and a new one issued in favor of another, in ignorance of the cancellation, or if, as in the case of *Tepper* v. *Supreme Council, 14 Dick. Ch. Rep. 322,* the beneficiary ignorantly paying cannot claim the benefit, because he is not included in the class of persons to which, according to the law of the association, payment may be made, I can see why such premiums should, in equity, be returned; but, in the case at bar, all the payments were made while complainant was the nominee. They were made on a contract whose very essence was that it was subject to change at the will of the member. She is herself suing upon it and asking for its enforcement. Upon what principle can she recover the money? As well might the legal representatives of a joint tenant obligee claim to have back money to be repaid with the chance of survivorship. It seems to me that *Fisk* v. *Equitable Aid Union, 11 Atl. Rep. 84,* is founded on principle, and that the decision is applicable to this case. *Leslie* v. *French, 23 Ch. Div. 552.* A defendant in equity may sometimes claim an allowance to which he would not be entitled as plaintiff, on the principle that the latter, asking equity, must do equity. Mrs. Spengler is not in a position to say that she should have the benefit of this maxim; she is plaintiff asking for the enforcement of what she considers to be her legal right. I think, therefore, the bill must be dismissed.