# Deming *v.* Lee, *et al.*

*Bill to Enforce a Trust.*

(Decided June 29, 1911.   Rehearing denied Dec. 21, 1911.
56 South. 921.)

1. *Trusts; Resulting; Title in Agent; Payment of Purchase Money.*
—The statute of frauds prohibiting resulting trusts in land by oral
agreement does not prevent the establishment of a resulting trust
where the purchase is made through an agent who takes title to the
lands in himself; in such case a trust will result to the principal
who advances the money, or if the trustee employs the funds of a
cestui que trust, or an agent employs the money of the principal in
the purchase of land, such trustee or agent may be made personally
liable, or the money may be followed into the land, or a trust on the
legal estate will result by operation of law.

2. *Same; Constructive Trust; Purchase of Real Property; Statute
of Frauds.*—The facts in this case stated and it is held that C.
purchased the lot with complainant's funds as agent for both com-
plainant and defendant, and as he took title in his own name merely
to convey it to the proper parties, he held the legal title to at least
half of the lot for the complainant who thereby acquired an equitable
title thereto, so that when defendants refused to perform their oral
contract to convey the other property, complainant being unable to
enforce the same because of the statute of frauds, was entitled to
recover back his interest in the lot purchased by the agent, on the
theory of a constructive trust.

OF ALABAMA. 411.

3. *Fraud; Statute of; Parol Promise; Statu Quo.*—The facts stated and held to require payment by complainant of the money which had been returned to him on the theory that a party who has parted with something on the face of an unenforceable parol promise, will be placed in statu quo.

(Dowell, C. J., McClellan and Mayfield, JJ., dissent.)

APPEAL from Conecuh Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by J. D. Deming against Walter Lee and others, to enforce a trust and for other relief. Decree for respondents, and complainant appeals. Reversed and rendered.

HAMILTON & CRUMPTON, for appellant. The contract here related is voidable at the election of the vendor and the vendee has no right to recover damages for its breach, and no court will compel specific performance, but the vendor must return just such property as he may have received under the contract he elects to treat as void.—*Flinn v. Barbour,* 59 Ala. 446; s. c. 64 Ala. 193. Title acquired by fraud makes the person so acquiring it trustees for the injured party.—*Kent v. Dean,* 128 Ala. 600; *Thompson v. White,* 1 Am. Dec. 259; *Coleman v. Cook,* 18 Am. Dec. 757. Equity will not permit a party to retain title to property on the faith of a verbal contract to consummate a fraud by retaining the property and refusing to perform.—*Mayor v. Mayor,* 21 Hun. 72; *Levy v. Bush,* 45 Ind. 597. Equity will not permit the statute of frauds to be used as an instrument for perpetrating a fraud, but will put the injured party in statu quo.—*Sherman v. Scott,* 27 Hun. 323; *Ryan v. Dox,* 34 N. Y. 307; *Dodds v. Wellman,* 42 How. 431; *Kent v. Dean, supra.*

W. L. PARKS, for appellee. The soundness of the principles asserted by complainant is not doubted, but

it is insisted that they are not applicable to the facts made by the bill. The allegations are not sufficient to invoke the doctrine contended for, but should show fraud, imposition or mistake at the time the trust was created, or the contract made, and not subsequent imposition or mistake.—*Patton v. Beecher,* 62 Ala. 589; *Brock v. Brock,* 90 Ala. 86; *Smith v. Smith,* 153 Ala. 513.

SIMPSON, J.—The bill in this case was filed by the appellant, alleging that when the county was about to sell, at public outcry, a jail lot, which joined complainant's property on one side and the property of defendants on the other, complainant made an oral agreement with defendants that Arthur Cunningham should purchase said jail lot at said sale, and hold the same in trust for complainant and defendants, said agreement fixing complainant's interest as one-half, and that of the defendant's together at one-half; that said Arthur Cunningham agreed to so act for said parties, and on the 25th day of August did purchase said property at said sale for $1,500, delivering to the commissioner who sold said property a certified bank check furnished by the complainant, which check was accepted by the commissioner, and the sale reported to and approved by the court; that after said sale, and before the conveyance to said Cunningham, complainant and defendants entered into another verbal contract, by which it was agreed that said Cunningham should convey the entire jail lot to the defendants, and the defendants would convey to complainant a certain other piece of property, described in the third section of the bill, and "complainant agreed to pay, in addition to a surrender to said Walter Lee and W. W. Pridgen, as partners aforesaid, of his said one-half interest in said trust property

so purchased by said Cunningham for them, the sum of $500.00;" that the deed was made to said Cunningham, and he, on the same day, in accordance with the oral contract, conveyed the property to the defendants, and after said deeds were delivered said Cunningham received from the commissioner who had sold the lot the certified check, and defendants paid for the lot, all of which was done in pursuance of the oral agreement; that, although the complainant has tendered to said defendants said $500, with interest, and a deed, properly drawn up, conveying said lot which they had agreed to convey to him, they have wholly refused to receive said money and sign said deed, and complainant is still ready and willing to pay whatever is due, according to said agreement, and to carry out said oral agreement.

The bill also alleges that defendants have placed valuable improvements on the jail lot conveyed to them by Cunningham, as to the value of which complainant is not informed; but if the court shall determine that complainant is entitled to an undivided one-half interest in said property, complainant is able and willing, and offers to pay to defendants one-half the purchase price of said lot, with interest, one-half the costs of said improvements, "for whatever sum or sums the court may determine is just and equitable," and submits himself to the orders of the court, agreeing to pay whatever sums the court may deem equitable.

The prayers of the bill are for a specific performance of the contract, or, in the alternative, for a reference to ascertain what amount shall be paid by complainant for purchase money and improvements, and that the defendants be ordered to convey to him the one-half interest in said jail lot, etc. The defendants interposed a plea, setting up the statute of frauds, which was set

[Deming v. Lee, et al.]

down for hearing as to its sufficiency. The chancellor held it sufficient, and this appeal is from that decree.

There can be no controversy as to the correctness of the authorities cited by the chancellor, to the effect that an oral contract for the sale of lands is void under our statute of frauds, and cannot be enforced, but, in the language of Judge Pomeroy: "It is a most important principle, thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud, or in the consummation of a fraudulent scheme."—2 Pomeroy, Eq. Jur. (3d Ed.) § 921, p. 1658.

"If an oral contract provides for conveyances by both parties, a conveyance by one does not give him a right of action by law for the failure of the other party to convey, but he may recover the value of the land he has conveyed."—20 Cyc. 293.

Assumpsit lies for the recovery back of the money paid on the oral contract for the purchase of lands, void by the statute of frauds.—*Allen v. Booker,* 2 Stew. 21, 19 Am. Dec. 33; *Flinn v. Barber,* 59 Ala. 446; *Flinn v. Barber,* 64 Ala. 193; *Nelson v. Shelby Mfg. & Imp. Co.,* 96 Ala. 515, 527, 11 South. 695, 38 Am. St. Rep. 116.

"One who has rendered services or transferred property under a contract voidable under the statute may recover the value of the services or property, under the quantum meruit or the quantum valebat."—*Wolke v. Fleming,* 103 Ind. 105, 110, 2 N. E. 325, 328, 53 Am. Rep. 495, 498.

Where the plaintiff conveyed a lot to his father, on a verbal promise of the father to make a will, and thereby devise certain property to the son, and the father died

. without performing the agreement, it was held that, as the father's verbal agreement was void and could not be enforced, a trust resulted in the land conveyed in favor of the son, and he was entitled to have the legal title of the property which he had conveyed vested back in him.—*Russ v. Mebius,* 16 Cal. 350, 355. It is true that in that case a question was raised as to whether the plaintiff, having made a deed to his father, reciting a consideration, could deny that recital; but that part of the opinion has no application to this case.

So the question arises, Did the complainant have such an interest in the jail lot as could be and was transferred to respondents on the faith of the parol promise?

Without adverting to the fact that the agent in this case was not claiming any right to refuse to convey the legal title, but, on the contrary, was ready and willing to convey, in accordance with his agreement, we hold that the law, without any aid from his verbal agreement, fixed a trust on the property which entitled the complainant to have the legal title conveyed, in accordance with his directions.

Mr. Pomeroy says: "In pursuance of the ancient equitable principle that the beneficial estate follows the consideration and attaches to the party from whom the consideration comes, the doctrine is settled in England and in a great majority of the American states that, where property is purchased and the conveyance of the legal title is taken in the name of the person, A., while the purchase price is paid by another person, B., a trust at once results in favor of the party who pays the price, and the holder of the legal title becomes a trustee for him."—3 Pomeroy, Eq. Jur. (3d Ed.) § 1037, pp. 1991, 1992. In note 2 to this section, it is stated that: "This description assumes that the conveyance to A. is made

with the knowledge and consent, express or implied, of B. who pays the price; that the whole transaction is in pursuance of a common understanding or arrangement. If the conveyance is taken by A., secretly, contrary to B.'s wishes, in violation of a duty owed to him, or in fraud of his rights, the trust which arises in B.'s favor is not 'resulting,' but 'constructive.' "

This court has said, years ago, referring to our statute prohibiting the creation of trusts in land by parol, which is a "substantial re-enactment of the seventh and eighth sections of the English statute of frauds": "If the purchase is made through an agent, who takes title in himself, the trust will result to the principal, who advances the purchase money. Or, if a trustee employs the funds of the cestui que trust, or an agent the moneys of the principal, in the purchase of lands, the trustee or the agent may be made personally liable, or the money may be followed into the land, or a trust of the legal estate will result by implication of law."—*Lehman et al. v. Lewis,* 62 Ala. 131, 132. This same principle is declared in numerous other cases; the distinction being made between "resulting trusts" and "constructive trusts" and "trusts ex maleficio," according to whether the funds of the principal were used and the title taken by the agent, with the consent or agreement of the principal, or done in violation of the duty of the agent.—*Coles & Wife v. Allen et al.,* 64 Ala. 98, 106; *Whaley v. Whaley,* 71 Ala. 159; *Long, Adm'r, v. King,* 117 Ala. 423, 429, 430, 23 South. 534; *Sanders v. Steele et al.,* 124 Ala. 415, 417, 418, 26 South. 882.

Where an agent, for the purpose of purchasing the mineral interests in lands, purchased the fee-simple title, paid for same with his principal's money, and took title in himself, he holds the title to the mineral interests in trust for his principal, and such resulting trust

can be enforced by the principal or his grantee by divesting the legal title out of the agent and investing it in the principal or his grantee.—*Milner v. Rucker,* 112 Ala. 360, 363, 20 South. 510.

. Where money to redeem lands is furnished to the mortgagor by a third person, under a parol agreement that upon the redemption of the land the same should be conveyed to the person furnishing the money, a resulting trust is created in the lands in favor of said third person.—*Tillman v. Murrell et al.,* 120 Ala. 239, 241, 24 South. 712.

Where one party, at the instance and request of another, acts as his agent in bidding off lands at auction, and paying for it with funds of the principal, and takes the deed in his own name, a constructive trust arises, which creates an equitable estate capable of sale.—*Sanford v. Hamner,* 115 Ala. 408, 413, 414, 416, 22 South. 117, 119, 120.

The court held that, as the trust resulted from the breach of duty (the agent not being authorized to take the title in his own name), it was a "constructive," as distinguished from a "resulting," trust, stating: "This case is thus brought squarely within a well-defined, well-understood class of constructive trusts, which does not, like a resuling trust proper (which arises by a purchase, by one not a fiduciary, in his own name, and the payment of the purchase money in whole or in part by another, in favor of him who pays the purchase money), depend upon the presumed intention of the parties," etc. It is the well-settled doctrine that this class of trusts "may be established by parol," notwithstanding the section in the Code.

Says Pomeroy: "The interest of the cestui que trust in a resulting trust is not a mere 'eqiuty'; it is an equitable estate in the land or other thing, of which the legal

title is vested in the trustee; and, as such, it may be conveyed, transferred, devised, or otherwise dealt with as property.  *  *  *  The cestui que trust is entitled to the remedy of compelling a conveyance or assignment of the legal estate to himself by the trustee."—3 Pomeroy, Eq. Jur. § 1043, pp. 2005, 2006.

Mr. Pomeroy also declares that a constructive trust arises whenever an agent or other person occupying a fiduciary position invests the funds of his principal and takes the title to himself, independently of any imputation of fraud, and without requiring any proof of an intention to violate the existing fiduciary obligation, because it assumes that the purchaser intended to act in pursuance of his fiduciary duty (3 Pomeroy, Eq. Jur. [3d Ed.] § 1049, p. 2020 et seq.) : "Whenever a person acquires the legal title to land or other property by means of an intentionally false or fraudulent verbal promise to hold the same for a certain specified purpose, as, for example, a promise to convey the land to a designated individual, or to reconvey it to the grantor, and the like,  *  *  *  equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement."—3 Pomeroy, Eq. Jur. (3d Ed.) [ 1055, pp. 2036, 2037.

In our case of *Butts v. Cooper,* 152 Ala. 375, 44 South. 616, the evidence did not show "that the cash payment which went into the purchase of the Cosby interest was the money of Butts"; hence the idea of a resulting trust was excluded; nor did it show that there was any violation of fiduciary relation. In fact, the evidence did not show a fiduciary relation; hence a constructive trust could not be declared.

In the present case, Cunningham, as the agent for complainant and defendants, purchased the jail lot with

the funds of the complainant, used at the time of the purchase, and took the title in his own name for the purpose merely of conveying it to the proper parties; and, in whatever light we view the transaction, he held the legal title to at least half of said jail lot for the complainant, and even if he had refused to convey the legal title he could have been forced to do so. It necessarily results that the complainant had an equitable title in said lot, which he caused to be conveyed to the respondents, in reliance upon their oral promise to convey the other lot, and, on the principles above declared, he, not being able to enforce the parol agreement, has the right to recover back the interest in the jail lot conveyed to them.

It matters not whether the suit is to recover purchase money paid, or property conveyed, or for the value of property conveyed, or for services rendered, the broad and just equitable principle is that, where one, by virtue of a parol agreement, which cannot be enforced, has received money, or property, or personal services, as a consideration for that which he has orally agreed to convey, and claims the benefit of the statute to prevent the enforcement of his parol agreement, he has received money, property, or services, for which he has paid no consideration, and which, ex æquo et bono, belong to the other party; and a court of equity will not allow him to retain it, and will force him to return the property, where that is demanded and can be done, or will require him to pay for what he has received. "Equity will not permit a party to retain property, obtained *on the faith of a verbal contract,* to consummate a fraud by retaining the property and *refusing to perform the contract.*"—*Baker v. Scott,* 2 Thomp. & C. (N. Y.) 606; *Peabody v. Fellows,* 177 Mass. 290, 58 N. E. 1019; *Ramey et al. v. Slone et al.* (Ky.) 62 S. W. 879; *Moyer v.*

*Moyer,* 21 Hun, 67, 72; *Ryan et al. v. Dox,* 34 N. Y. 307, 319, 90 Am. Dec. 696.

Our case of *Kent et al. v. Dean,* 128 Ala. 600, 609, 610, 30 South. 543, 546, though not strictly identical with the case at bar, is, nevertheless, along the line of the same general broad equitable principles; and this court, quoting from Pomeroy, says: "Whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means, or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had the legal estate therein; and a court of equity has jurisdiction to reach the property in the hands of the original wrongdoer, or in the hands of a subsequent holder, until a purchaser of it, in good faith and without notice, acquires a higher right, and takes the property relieved of the trust."

In the present case, Cunningham, as the agent of complainant and defendants, purchased the property and deposited complainant's certified check to pay for it. Thereupon the equitable title vested in complainant and defendants, with the right to have the legal title vested in them. The complainant surrendered that equitable title under the parol agreement, which the defendants refuse to carry out, and it is inequitable, under the authorities cited, to allow them to retain the property thus received, while refusing to carry out their agreement.

[Deming v. Lee, et al.]

The general principle is that the party who has parted with something on the faith of a parol promise, which is unenforceable, will be placed in statu quo. What was the status of the complainant before he made the last parol agreement? He was the owner of at least one-half of the jail lot, having paid for it; so whatever profit in said lot there was, over the amount paid for it, he was entitled to. He surrendered this half interest in consideration of the parol agreement, and his money was returned to him. To place him in statu quo, and to do equity, it necessarily follows that he should be reinvested with his interest in said lot, and, that being done, it is just and equitable that he should repay the money which had been returned to him.

The plea was to the entire bill, and, although bad as to the specific performance feature of the bill, was good as to the alternative feature. The statute of frauds is no answer to this claim, and the decree of the court will be reversed and a decree here rendered, declaring the plea insufficient.

Reversed and rendered.

ANDERSON, SAYRE, and SOMERVILLE, JJ., concur. DOWDELL, C. J., and McCLELLAN and MAYFIELD, JJ., dissent. McCLELLAN, J., entertains the opinion that the decree should be affirmed upon the apt authority of *Patton v. Beecher,* 62 Ala. 579; *Brock v. Brock,* 90 Ala. 86, 8 South. 11, 9 L. R. A. 287; *Smith v. Smith,* 153 Ala. 504, 45 South. 168.

MAYFIELD, J.—(dissenting.)—The bill in this case sets up two parol contracts as to lands, each as to a separate lot. The first was a contract between the parties to this bill to purchase a certain lot of land from a third party, through or by a common agent, for the

equal and joint benefit of both parties; the second was between the same parties, by which the respondents agreed to sell and convey another lot to the complainant.

The first contract was partially performed—that is, the lot was purchased by the common agent from the third party for the equal benefit of the parties, the consideration therefor being paid by the complainant, or by his certified check being deposited therefor; but, before the transaction was consummated by conveyance of title to the common agent, and by him to the parties, it was agreed between them that they would abandon the first contract or agreement, and, in lieu thereof, that the common agent should deliver to the complainant his check, which he had deposited as a purchase price for the first lot; that the respondents should pay the whole of the consideration; and that the common agent should then convey the entire title to the respondents; and that in consideration of $500 additional, to be paid by the complainant, the respondents should convey to him another and different lot.

This contract was partly performed—that is, to the extent that complainant's check was redelivered to him, and a conveyance of the first lot was executed by the common agent to the respondents—but the respondents refused to convey the second lot to the complainant in accordance with the second contract. The bill is primarily to enforce this second contract, and alternatively to enforce the first.

To the bill the respondents interposed a special plea, setting up the statute of frauds, and the case was set down for hearing on the sufficiency of this plea. From a decree holding the plea sufficient, complainant prosecutes this appeal.

[Deming v. Lee, et al.]

The majority opinion holds the plea sufficient as to the second parol contract, but insufficient as to the first; and therefore overrules the decree of the chancellor. To this conclusion and opinion, I cannot agree.

It is conceded by the majority opinion, and as to which there can be no doubt, that both contracts were void under the statute of frauds, but it is insisted that the first contract had become so impressed or inoculated with some kind of a trust, either constructive or resulting, that it was taken without the influence of the statute of frauds, and that complainant was entitled to relief under the second alternative prayer.

I do not doubt the soundness of the proposition of law announced in the majority opinion, nor the soundness or correctness of the principles announced in the authorities cited therein. It is a valuable and learned discussion on the subject of constructive, resulting, and implied trusts; but the error is in the decision, not in the opinion.

The averments of this bill do not bring the complainant within the protection of the principles announced in the opinion in this case, nor of those of the authorities cited. If the complainant is entitled to relief upon the theory of an implied trust, whether constructive or resulting, and so entitled, notwithstanding the parol contract, then he is entitled to a conveyance of the whole, and not of a part only, of the first lot; that is, if a trust was created by reason of his having paid the purchase price, he is entitled to a conveyance of the whole title, for the reason that, if the deposit of his check and the redelivery of it to him constituted a payment of the purchase price, he paid the whole of the purchase price, and is therefore entitled to a conveyance of the whole.

Th bill, however, does not seek this, nor is it placed upon this ground, but it seeks only a performance of the parol contracts. The opinion and decree of this court would require the respondents to convey to complainant a half interest in this lot, when the bill shows that the complainant has never requested nor demanded such conveyance. The bill shows that, whereas he could have had performance under the parol contract which he now seeks to enforce, he voluntarily abandoned it, and entered into another, in lieu thereof.

The bill does not allege that before its filing the complainant had ever demanded or requested the respondent to convey to him a half interest in the first lot; but shows, on the contrary, that his only demand and only request was that they convey to him this last lot, which this court holds he is not entitled to have. It may be, so far as appears from the bill, that the respondents insist upon plaintiff's carrying out the first contract and paying half the purchase price, and taking a conveyance to a half interest therein.

If the bill alleged that the respondents, through fraud or false representation, had induced the complainant to abandon the first contract and enter into another, for the purpose of defrauding him, and with the intention that they would not perform the second contract, and that this purpose and intention existed at the time of making such contract, complainant might then have some show, or there might be some equity in his claim that there was some kind of a trust thereby created which the court of equity would enforce, to protect him from loss and to prevent the respondents from perfecting their fraudulent scheme or purpose. But there is no such claim made in the bill. So far as the bill shows (and its averments in this respect must be taken against the pleader), the second contract was

[Deming v. Lee, et al.]

originated and conceived by the complainant, and was only agreed to by the respondents, and was made in good faith, and with the intention of carrying it out; and it was only upon discovering that it was in violation of the statute of frauds, or for some other reason, that the respondents decided not to carry it out.

The only fault or failure attempted to be alleged in the bill against these respondents is that they failed and refused to fully perform the second parol contract. It is not intimated in the bill that they declined or refused to perform the first, but the bill distinctly avers that it was mutually abandoned before consummation, and the second substituted in lieu thereof.

Moreover, if it should be conceded that the majority opinion is correct in this case, and that the bill shows that the complainant is entitled to relief under the second alternative prayer, I am unable to see any reason why the trial court should be put in error for holding a plea good which the opinion concedes and decides was good as to one alternative of the bill. A plea in equity, unlike a plea in a court of law, may be good as to a part of the bill and not good as to another part.

It may be shown that the complainant is not entitled to one relief prayed, without showing that he is entitled to all the relief prayed. A defendant in equity may plead to a part of a bill, may demur to other parts, and may answer the remainder; and all of these defenses, under our statute and rules of practice, may be incorporated in one answer.

The plea interposed in this case, being pronounced and held good as to the prime purpose and object of the bill, was certainly a defense to the bill in its present shape, and the complainant, if the opinion of this court is correct, should certainly be required to amend his bill by striking out that part which seeks and insists upon

relief by specific performance of the second parol contract, which the court holds is void, and as to which the plea is good.

For these reasons, I am of the opinion that the decree of the chancellor should be affirmed.