(118 So. 912)

**SUMMERS v. SUMMERS.** (6 Div. 961.)

Supreme Court of Alabama.   June 30, 1928.

Rehearing Granted Nov. 30, 1928.

G. M. Edmonds, of Birmingham, for appellant.

London, Yancey & Brower and J. K. Jackson, all of Birmingham, for appellee.

SOMERVILLE, J. ▮ Independent of the influence of any statute affecting the subject, the authorities are overwhelmingly to the effect (1) that the mere custody of. a life insurance policy by the beneficiary named therein, though that beneficiary also *voluntarily* pay the dues or assessments thereon, will not deprive the insured of his expressly given power to change the beneficiary in accordance with the rules of the association; and (2) that, where the original beneficiary is named pursuant to an agreement, express or implied, that he shall be so named, upon some valid consideration moving from him, he acquires an equitable interest in the policy which cannot be defeated by a substituted beneficiary having no superior equity, notwithstanding the general rule that the beneficiary of such a certificate does not acquire a vested right. Columbian Circle v. Mundra, 298 Ill. 599, 132 N. E. 213, 18 A. L. R. 378, and note, 383–393; McDonald v. McDonald, 212 Ala. 137, 102 So. 38, 36 A. L. R. 761; Id., 215 Ala. 179, 110 So. 291; 37 C. J. 579, 580, § 345.

Those principles of law are not disputed, and the decisive question here presented is whether or not the second proposition upon which the equity of complainant's bill depends has been changed, with respect to fraternal benefit policies like this, by section 8445 of the Code, which is a part of the act of April 24, 1911.

This statute, after limiting the beneficiaries that may be named to certain specified relatives or dependents, declares:

"Within the above restrictions each member shall have the right to designate his beneficiary, and, from time to time, have the same changed in accordance with the laws, rules or regulations of the society, and *no beneficiary shall have or obtain any vested interest in the said benefit until the same has become due and payable upon the death of the said member.*"

▮ This declaration is positive and sweeping in its terms. If it were stated merely that such a beneficiary took no vested interest it might be fairly contended that this did not change the general principle which recognizes a vested equity in beneficiaries under the conditions predicated above; but, when it declares that *no beneficiary shall have or obtain any* vested interest before the death of the insured, we cannot avoid the very plain meaning of the words, nor deny to them the effect so plainly intended by the Legislature—an effect in line with all modern legislation on this subject, and specifically with the Uniform Fraternal Beneficiary Act, adopted in many of the states, as pointed out by Mr. Bacon in his Benefit Societies (4th Ed.) vol. 1, pp. 863, 864. See, also, Supreme Tent, etc., v. Altmann, 134 Mo. App. 363, 114 S. W. 1107; Supreme Council, etc., v. Behrend, 247 U. S. 394, 38 S. Ct. 522, 62 L. Ed. 1182, 1 A. L. R. 966; Malancy v. Malancy, 165 Wis. 642, 163 N. W. 186; Grand Lodge, etc., v. Denzer, 129 Ky. 202, 110 S. W. 882, where the influence of statutes or by-laws was fully recognized.

Under the influence of this statute, the complainant did not acquire, and could not "obtain," any vested equity in this policy unless she were the actual and nominal beneficiary therein at the time of the death of the insured, *unless* it appears that this Brotherhood of Railroad Trainmen is an association which is excepted by some other statute from the provision in question.

Counsel for complainant point, for this effect, to section 8503 of the Code, in the same article, declaring that—

"Nothing contained in this article shall be construed to affect or apply to * * * or societies which limit their membership to any one hazardous occupation. * * *"

■■ The burden is, of course, upon the complainant to show that this insurer—brotherhood—is an excepted class in order to escape the effect of section 8445. As to this the bill of complaint avers nothing, but counsel insists that this court may and must take judicial notice of the fact that this brotherhood has a membership limited by its own laws to "one hazardous occupation." We are clear, however, in the conviction that our judicial knowledge does not extend so far. At most, we might infer that its membership is made up of trainmen; but, even so, we do not know that all members are restricted to a single, and also a hazardous, occupation. Those are not matters of common knowledge, and they must be alleged and proved.

The case of Sovereign Camp v. Allen, 206 Ala. 41, 45, 89 So. 58, does not support appellant's theory of judicial notice, and holds merely that courts judicially know that the position of a railroad *flagman* is one of "hazardous employment," equally with that of conductor, brakeman, fireman, or switchman, a very different matter.

■ It is suggested for appellant that in any case she is entitled to reimbursement out of the policy fund to the extent of the dues and assessments paid by her. Such a claim, however, falls as clearly within the inhibition of the statute (section 8445) as a claim to the entire fund, and cannot be allowed without violating the law. Royal Arcanum v. Hartzman, 140 Mo. App. 105, 120 S. W. 629.

■ The dismissal of the bill as unamendable, though assigned for error, is not argued in the brief for appellant, and hence we treat it as waived.

■ As to the contention that complainant was defrauded by a false affidavit by means of which the insured effected the substitution of another beneficiary and secured the issuance of a new policy, as observed by Mr. Justice Sayre in McDonald v. McDonald, 212 Ala. 137, 141, 102 So. 38, 36 A. L. R. 761, if complainant had no vested interest in the policy, she could not have been defrauded, and, if she had such an interest, the alleged fraud could not have affected it; hence the imposition, if any, was upon the association

alone, and, if the association waives it, no one else can complain. It was so declared in Slaughter v. Grand Lodge, etc., 192 Ala. 301, 305, 68 So. 367. See, also, to the same effect, Hoeft v. Supreme Lodge, etc., 113 Cal. 91, 45 P. 185, 33 L. R. A. 174; 4 Cooley's Briefs on Insurance, 372. The allegation of fraud in this behalf does not aid the bill.

It results that the demurrer to the bill is well grounded and was properly sustained.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

## On Rehearing.

FOSTER, J. ■ The effect of the statute (section 8445 of the Code) is construed to mean that the insured cannot by contract create a vested right to any extent in a beneficiary of a policy within the operation thereof, and exempts such contracts from the rule permitting an assignment thereof, referred to in the case of McDonald v. McDonald, supra; Slaughter v. Grand Lodge, 192 Ala. 301, 68 So. 367. When the policy was procured, it was with the presumed knowledge of the statute. Parker v. Mosaic Templars, 212 Ala. 471, 103 So. 65; Mosaic Templars v. Raife, 215 Ala. 159, 110 So. 67; Baldwin v. Begley, 185 Ill. 180, 56 N. E. 1065.

As pointed out above, if appellant has no vested right in the policy, she has nothing in it out of which she could be defrauded. In addition to the citations above, the following may be noted as directly in point: Alfsen v. Crouch, 115 Tenn. 352, 89 S. W. 329; Brown v. Grand Lodge, 80 Iowa, 287, 45 N. W. 884, 20 Am. St. Rep. 420.

■ It is insisted that complainant has an equitable lien in the nature of a trust, because her money was wrongfully obtained with which the premiums were paid, citing Cooley's Briefs on Ins. vol. 7, p. 6492 (Ed. 1928). The authorities cited there apply when trust funds are used by the insured to pay the premiums. It is upon the principle "which allows a cestui que trust to follow trust funds, and to appropriate to himself the property into which such funds have been changed," as where a partner wrongfully abstracts partnership funds, with which he pays premiums on a policy payable to his wife, Holmes v. Gilman, 138 N. Y. 369, 34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463; Dayton v. Claflin, 19 App. Div. 120, 45 N. Y. S. 1005; or where "the premiums were paid from funds stolen or embezzled," Truelsch v. N. W. Mutual Life Ins. Co., 186 Wis. 239, 202 N. W. 352, 38 A. L. R. 914; Vorlander v. Keyes (C. C. A.) 1 F.(2d) 67; Mass. Bonding & Ins. Co. v. Josselyn, 224 Mich. 159, 194 N. W. 548; Anno. page 930, 38 A. L. R. There is no reason why this principle may not be extended to an instance where a person by fraudulent concealment is induced to pay out

money on a mistaken assumption of an interest in the policy. By such concealment, a trust ex maleficio, *constructive* in nature, is created to the extent of the funds so paid. The effect of the transaction is that the insured obtained the funds of appellant by fraud, and they were used in paying the premiums on the policy sued on, thereby tracing such trust funds into said property. Royal Arcanum v. McKnight, 238 Ill. 349, 87 N. E. 299; Allen v. Cunningham, 143 Tenn. 11, 223 S. W. 450.

In the case of Kent v. Dean, 128 Ala. 600, 30 So. 543, this court quotes from 2 Pom. Eq. §§ 1053, 1055, as follows:

"Whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentation, concealments [or etc.], or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same; * * * and a court of equity has jurisdiction to reach the property * * * until a purchaser of it in good faith and without notice acquiries a higher right." Fields v. Fields, 211 Ala. 649, 101 So. 588; Deming v. Lee, 174 Ala. 410, 56 So. 921; Browning v. Kelly, 124 Ala. 645, 27 So. 391; Parker v. Jones, 67 Ala. 234; 39 Cyc. 528; 26 R. C. L. 1348; 2 Beach on Trusts, 1624.

It will be impressed upon property in the hands of a married woman, though she is under certain disabilities. Manning v. Pippen, 86 Ala. 357, 5 So. 572, 11 Am. St. Rep. 46. As soon as the property is acquired by a bona fide purchaser, it then ceases as such property and attaches to the proceeds received from such purchaser. 2 Beach on Trusts, 1625.

To create a constructive trust, "actual fraud is not necessary; but such a trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title." 39 Cyc. 169.

"One who acquires land or other property by fraud, misrepresentation, concealment, or under any other circumstances as render it inequitable for him to retain it, is, in equity, regarded as the trustee of the party who suffers by reason of the fraud or other wrong and who is equitably entitled to the property." 39 Cyc. 172.

It is well settled that the payment of the premiums by appellant does not without fraud impress upon the policy any right to reimbursement when she has presumed knowledge of the right to change the beneficiary. 45 C. J. 258; Spengler v. Spengler, 65 N. J. Eq. 176, 55 A. 285; Supreme Lodge v. Hine, 82 Conn. 315, 73 A. 791.

The bill may not be sufficient in its averment of fraud; but there was no ground of demurrer for such insufficiency. While the court will not consider the bill as amended to the extent of adding new matter in the nature of independent facts essential to be averred, it will, for the purpose of determining its equity, view the bill as if the matters stated were properly pleaded. Slaughter v. Grand Lodge, supra. While fraud is not sufficiently alleged, there is an allegation of fraud, and a general demurrer for want of equity should not be sustained, but to reach that defect the demurrer must specifically point it out. Seeberg v. Norville, 204 Ala. 20, 85 So. 505; McDuffie v. Lynchburg, 178 Ala. 271, 59 So. 567; Shannon v. Long, 180 Ala. 128, 60 So. 273; Whitman v. Taber, 203 Ala. 496, 83 So. 595.

We hold, therefore, that the demurrer should not have been sustained, and that the bill has equity for the purpose of tracing appellant's funds alleged to have been fraudulently obtained, consisting of the payments of the premiums and interest from date of each payment, and of impressing upon the proceeds of the policy a trust to the extent of such funds so obtained with the interest thereon.

Application for rehearing granted, and the cause reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.