This action began as one for sale for division of certain lands.
Mrs. Minnie Adkins Miller is the mother of the plaintiff and all of the original defendants. She was first married to Mr. Adkins and had several children by him. They lived on the property as man and wife, as tenants of Acmar Land Company, for whom Mr. Adkins worked. Mr. Adkins was killed in the 1930's. Mrs. Adkins continued to live on the property; and, three or four years after her first husband's death, she married Mr. Miller, who was the father of the plaintiff, Faye Miller Cole. Mr. Miller died in 1963.
James Louis Adkins acquired title to the property from Acmar Land Company in 1952; and in 1954 acquired an adjoining piece of property from Ella and J.L. McLaughlin. His mother continued to live on the property and did so until her death in 1970. James Louis Adkins paid taxes on the property from 1952 to the present.
In 1963 (the year in which his stepfather died), James Louis Adkins executed a deed to the property to his mother. No consideration passed for this deed, and James Louis continued to support his mother until she died. After her death, intestate, Faye Miller Cole, a half sister of the Adkins children, filed this action against the Adkins for a sale for division. All of the other Adkins children executed quit claim deeds in favor of James Louis and they were dismissed as defendants. James Louis filed his counterclaim seeking the declaration of a constructive trust in his favor.
The court granted the relief sought by counterclaim and the plaintiff appealed.
There is evidence in the record from which the trial court could have concluded, as it did, that, at the time the property was conveyed by James Louis to his mother, his mother promised to reconvey it to him. There was also evidence that James Louis conveyed the property to his mother, with whom he maintained a very close relationship until she died, to insure that she would have a place to live for the rest of her life regardless of any future financial reverses which he might suffer. The evidence does not show that he suffered any future financial reverses, and there is no evidence that the conveyance was made by James Louis to defraud his creditors. All of the witnesses, except the plaintiff, testified that the property belonged to James Louis, that he took care of his mother and other members of the family, including his half sister, the plaintiff, and her family, and that their mother always recognized that the property belonged to James Louis. Although James Louis did not rest his claim to the property under his mother's will and did not attempt to establish a lost will, there was evidence that his mother executed a will in which the property was left to James Louis. That will was drawn by an attorney and properly executed. The will was never found, but the fact of its execution and content was undisputed.
The trial court found that these circumstances created a constructive trust in favor of James Louis; and, since the plaintiff's only claim to any interest in the property was by way of intestate succession from her mother, the constructive trust attached to her interest in the property. We affirm.
On appeal, the plaintiff argues that the evidence fails to support the trial court's finding that a constructive trust existed in favor of James Louis. A constructive trust is properly impressed upon property under certain limited circumstances even though the Statute of Frauds makes an oral agreement to convey land unenforceable. In Restatement of the Law of Restitution, § 182 (1937 ed.), the principle is stated as follows:
 "Where the owner of an interest in land transfers it inter vivos to another upon an oral trust in favor of the transferor or upon an oral agreement to reconvey the land to the transferor, and the *Page 449 
trust or agreement is unenforceable because of the Statute of Frauds, and the transferee refused to perform the trust or agreement, he holds the interest upon a constructive trust for the transferor, if
[Emphasis Added]
 "(a) the transfer was procured by fraud, misrepresentation, duress, undue influence or mistake of such a character that the transferor is entitled to restitution, or [Emphasis Added]
 "(b) the transferee at the time of the transfer was in a confidential relation to the transferor . . .
". . .
"Comment on Clause (b):
 "c. Where transferee is in a confidential relation to transferor. Where the owner of an interest in land transfers it to another who orally agrees to hold it in trust for the transferor or to reconvey it to the transferor, and the transferee at the time of the transfer was in a confidential relation to the transferor, the transferee will not be permitted to keep the land but will be compelled to hold it upon a constructive trust for the transferor, since otherwise he would be unjustly enriched. A constructive trust will be imposed even though at the time of the transfer the transferee intended to perform the agreement, and even though he was not guilty of undue influence or other abuse of his confidential relation to the transferor in procuring the transfer. [Emphasis Added]
 "If the transferee at the time of the transfer was in a confidential relation to the transferor, a constructive trust will be imposed even though the transferee was not guilty of an abuse of the confidential relation in retaining the land. Thus, if the transferee dies intestate without having repudiated his promise but intending always to perform it, his heir will be compelled to hold the property upon a constructive trust for the transferor. A court of equity will not permit the unjust enrichment of the heir. [Emphasis Added] (See Restatement of Trusts, § 44, Comment c.)
 "A confidential relation exists not only where there is a fiduciary relation such as that between attorney and client, trustee and beneficiary, guardian and ward, partner and partner, and the like, but also where, because of family relationship or otherwise, the transferor is in fact accustomed to be guided by the judgment or advice of the transferee or is justified in placing confidence in the belief that the transferee will act in the interest of the transferor. [Emphasis Added] . . ."
Although not always easily distinguished, both resulting and constructive trusts have been recognized in Alabama. Cone v.Cone, 331 So.2d 656 (Ala. 1976); Sims v. Reinert, 285 Ala. 658,235 So.2d 802 (1970); and Putnam v. Putnam, 274 Ala. 472,150 So.2d 209 (1963). In 76 Am.Jur.2d, Trusts, § 222, the following appears:
 "A constructive trust is substantially an appropriate remedy against unjust enrichment. It is raised by equity in respect of property which has been acquired by fraud, or where, although acquired originally without fraud, it is against equity that it should be retained by the person holding it. . . ."
These principles seem particularly applicable in this case. The trial court found, and the evidence supports its finding:
 ". . . James L. Adkins, was at one time the absolute owner of the property described in Plaintiff's Petition seeking to sale [sic, sell] said property for division. . . . James L. Adkins transferred this property to his mother, Minnie Adkins Miller, without any monetary consideration in order that as long as Minnie Adkins Miller lived she would have a home in which to reside. The Court further finds that Minnie Adkins Miller promised to reconvey the property to James L. Adkins either during her lifetime or she would devise the said property to him in her Last Will and Testament.
 "It is clear from the evidence that Minnie Adkins Miller never claimed ownership to the property but recognized that *Page 450 
she held the said property in trust for her son, James L. Adkins, and further that she had promised to reconvey the property to him.
 "There is also no question that James L. Adkins was very close to his mother and assumed the major portion of the financial burden of taking care of her during the last few years of her life.
 "Therefore, the Court is of the opinion that a confidential relationship existed between Minnie Adkins Miller and James L. Adkins which was the primary motivation of James L. Adkins deeding the property to her."
The appellant contends that, without evidence that the grantee in deed, Mrs. Miller, grantor's mother, procured the deed by undue influence or fraud or that her will dominated that of her son, the court erred in imposing a trust in favor of the appellee. Although a constructive trust may result from actual or constructive fraud, these elements are not strictly essential prerequisites to the imposition of a constructive trust. A constructive trust will also be imposed upon property whenever the circumstances under which it was acquired make it inequitable that it should be retained by the holder of legal title provided some confidential relationship exists between the grantor and grantee; and provided the imposition of a trust is necessary to prevent a failure of justice. ". . . However, actual or intentional fraud is not an essential element of a constructive trust . . . a constructive trust may be imposed to prevent unjust enrichment, without regard to actual fraud . . ." 89 C.J.S. Trusts § 139.
The appellant in this case is correct in her contention that there was no evidence that her mother procured the transfer of the property by her son through fraud or undue influence. She concedes, however, that the evidence establishes that the property was conveyed to her mother by her son (appellant's half brother) without consideration; and that her mother agreed to reconvey it to him, either by deed or will.
 "Where property is conveyed to [a] person on his oral promise to hold it and later reconvey it . . . and at [the] time of conveyance he stands in a confidential relationship to [the grantor] . . a court of equity will not allow him to keep [the] property and be unjustly enriched, but will compel him to transfer title to [the] parties equitably entitled to it even though he may have intended at [the] time of conveyance to carry out [the] agreement, and even though he was not guilty of fraud, undue influence, or any other abuse of confidential relationship in procuring [the] conveyance." (Emphasis Added) 89 C.J.S. Trusts § 149, n. 24;
Citing: Carter v. Abramo, 201 Md. 339, 93 A.2d 546 (1953);Adcock v. Merchants Mfrs. Bank of Ellisville, 207 Miss. 448,42 So.2d 427 (1949); Opp v. Boggs, 121 Mont. 131, 193 P.2d 379
(1948); Rice v. Rice, 184 Md. 403, 41 A.2d 371 (1945); Grimesv. Grimes, 184 Md. 59, 40 A.2d 58 (1944); Jaeger v. Sechser,65 S.D. 38, 270 N.W. 531 (1936).
This rule was applied in Airola v. Gorham, 56 Cal.App.2d 42,133 P.2d 78 (1942), which, like this case, involved a conveyance between a mother and son.
We, therefore, cannot agree with the appellant that the evidence fails to support the trial court's finding that a constructive trust existed in favor of James L. Adkins.
The appellant also argues that the trial court is due to be reversed because the evidence shows that James L. Adkins comes into court seeking relief with "unclean hands." We cannot accept this argument. The appellant bases this argument on testimony that, at the time of the conveyance of the property to his mother, James Louis was engaged in some financial transactions, the success or failure of which was then unknown. However, there was no evidence that any creditor had any claim against him at the time of the conveyance of the property, and the evidence was that no claim by any creditor was, in fact, ever asserted against him. There is simply no evidence to support the argument that the conveyance *Page 451 
was made to defraud creditors. The only evidence bearing on this assertion was the testimony of Adkins and his wife that they wanted his mother to have a place to live regardless of his financial future.
The final argument advanced on appeal is that the trial court erred in allowing certain witnesses to testify as to statements made by the deceased, Minnie Adkins Miller, because such testimony was forbidden by § 12-21-163, Code 1975, or the so-called Dead Man Statute. Without elaboration, suffice it to say that there was evidence offered by several witnesses, none of whom had any pecuniary interest in the result of the litigation, which established that the decedent, on many occasions, told them that the property belonged to James Louis and she was only being allowed by him to live on it until she died. She had agreed to reconvey it to him by deed or will. Having no pecuniary interest in the litigation, these witnesses were competent to testify. Watson v. Watson, 283 Ala. 214,215 So.2d 290 (1968); Taylor v. First National Bank of Tuskaloosa,279 Ala. 624, 189 So.2d 141 (1966); and Meyers v. Meyers,141 Ala. 343, 37 So. 451 (1904).
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.