JONES, Justice.
The issue is: Where one party pays the purchase price for land and takes title jointly in the name of himself and others, in the absence of evidence of an intention of payor to make a beneficial gift of an undivided interest in the property to the other persons, will the other grantees be regarded as holding their interest upon a resulting trust for the payor? Or, stated in the context of the holding below: Did the trial court err in declaring, in favor of the payor, a resulting trust in the subject property where the record is devoid of any evidence that the jpayor did not intend to make a gift to the remaining joint grantees? We hold that the trial court erred in so holding; and we reverse and remand.
The facts are without dispute. Appellee, Austin, paid the entire purchase price (down payment plus monthly installments and all the annual taxes subsequent to the purchase) and knowingly and voluntarily took title jointly in himself, his mother and his stepfather, Elmer J. Favre (Appellants are heirs at law and children of a former marriage of Mr. Favre who died intestate).
Appellee, in support of the judgment below, cites Adams v. Griffin, 253 Ala. 371, 45 So.2d 22 (1949), for the proposition that, where one buys land in the name of another and pays the consideration generally the grantee will be regarded as holding the land in trust for the person who paid the consideration. This rule of presumption, argues Appellee, casts the burden on the one who would defeat the trust to prove to the trier of facts by clear and convincing evidence that a gift was intended by the payor.
Appellants, on the other hand, counter by asserting that the facts in the instant case fall within one of the recognized exceptions to this rule, and thus the burden to refute the presumption of a gift is upon the payor, Austin. Because counsel for each party cites Hooks v. Hooks, 264 Ala. 66, 84 So.2d 354 (1955), a detailed analysis of that case is appropriate. Preliminarily, however, we set forth, to the extent here applicable, a brief historical review of the general rule and its recognized exceptions. Professor Scott’s multi-volume treatise on trusts (Scott on Trusts, Vol. V, Resulting Trusts, Topic 4, commencing at p. 3308), tracks and amplifies the Restatement, Second, of Trusts, § 440, which states the general rule thusly:
“Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid, except as stated in §§ 441, 442, and 444.”
Section 441 reads:
“A resulting trust does not arise where a transfer of property is made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid manifests an intention that no resulting trust arise.”
“Comment e” thereunder is paraphrased in part by Professor Scott as follows:[1]
*111 “Where one person pays the whole of the purchase price for land and has the conveyance made to himself and another person as joint tenants or tenants in common, the very fact that the title is taken in this way is an indication of an intention to make a beneficial gift of an undivided interest in the property to the other person. It is stated in the Restatement of Trusts [‘Comment e’] that the fact that the payor takes title to property in the names of himself and another jointly is an indication of an intent to make a beneficial gift of an undivided interest to the other person; and the other person does not hold his interest upon a resulting trust for the payor in the absence of evidence that a trust rather than a gift was intended. There is authority to this effect. [Footnote of authorities omitted.] But it has been held that a resulting trust arises if it appears that a gift was not intended [citing in footnote Hooks v. Hooks, 258 Ala. 427, 63 So.2d 348 (1953), an earlier appeal on the pleadings in the same Hooks’ case cited above].” Scott on Trusts, at § 441.4 (pp. 3332-3).
Unquestionably, then, while the Restatement lists the fact situation here presented as “Rebutting the Resulting Trust” and thus places the burden upon the payor to negate the intention of a gift, Professor Scott’s Comment in the first Hooks’ appeal casts Alabama among the ranks of those states holding that these facts give rise to a resulting trust if an intention to make a gift is not shown. In other words, the inference of Professor Scott’s commentary is to the effect that the general rule presuming a resulting trust is not altered by the fact that payor took title jointly in himself and another; and, consequently, an absence of evidence of gift, vel non, would resolve the ultimate issue of resulting trust in favor of the payor. However accurate Professor Scott’s conclusion may appeal from a restricted reading of “Hooks No. I” (where the issue was confined to the pleading), suffice it to say that such conclusion overlooks “Hooks No. II,” affirming the judgment imposing the trust upon the “sufficiency of the evidence” test.
Appellee acknowledges that Hooks applied the “presumption of gift” exception to the general rule, but urges this Court to restrict its application to the Hooks’ facts— purchase in the name of a relative. Otherwise stated, Appellee contends that Mrs. Hooks, the mother, was required to overcome the presumption of gift to her son solely because of their relationship, and not because the payor-mother took title jointly in both names.
The election by the Hooks’ Court to ground its presumption of gift on the “relative” exception can hardly be construed as foreclosing recognition and application to the “joint grantee” exception. Indeed, the Restatement recognizes both exceptions (as well as others); and, as Professor Scott’s treatise on resulting trusts points out, the general rule and its well-established and recognized exceptions represent the majority view of courts in this country and England.
Our holding is no blind adoption of the Restatement; rather, it is based upon our concurrence with the soundness of its propositions and its underlying rationale. Originally, the early common law indulged every presumption favoring the validity of written agreements, which, when combined with the presupposed danger of perjured testimony, compelled the development of the early rule which placed a heavy burden on a payor asserting a resulting trust to disprove his intention to make a gift to the grantee. By the middle of the 16th century, however, it had become common practice for English landowners to place legal title in others for their use. Out of this almost universal practice, the courts evolved a rule of presumption that the transferee of land conveyed without consideration held title for the use of the trans-feror.
Likewise, while the law of modern trusts in America has generally rejected the English doctrine of gratuitous conveyance (ex *112 cept in constructive trust situations[2]), where one person purchased land and took title in another, the rule emerged that the payor was presumed to have intended the grantee to hold to the use of the payor.[3] By the time of the enactment of the original English Statute of Frauds (1677), this rule of presumption favoring resulting trusts was so established that the statute expressly excluded trusts which may “arise or result by the implication or construction of law.” In 1683, the case of Anonymous, 2 Vent. 361, held:
“Where a man buys land in another’s name, and pays money, it will be in trust for him that pays the money, tho’ no deed declaring the trust, for the statute of 29 Car. 2, called the Statute of Frauds, doth not extend to trusts, raised by operation of the law.”
By way of comment on this development, Professor Scott observes:
“It is true that the court here speaks of the trust as arising by operation of law, and in more recent times judges have sometimes so spoken; but other judges recognize that in enforcing such trusts they are in truth carrying out the intention of the parties. The real reason, it would seem, why such trusts are held valid without a writing is that, although they arise out of the intention of the parties, that intention is evidenced by the circumstances of the transaction rather than by the language of the parties. There is not, therefore, as a practical matter the same danger of perjured testimony as in cases where the only evidence of intention is the oral language of the parties.” Scott on Trusts, at 3315.
As for the exceptions (“ . except as stated in §§ 441, 442 and 444”) to this general rule, the very statement of the rule itself implies its restrictive scope. As here applicable, the last phrase of the Restatement’s pronouncement of the general rule may be paraphrased thusly: “ . except where the totality of the circumstances is itself indicative of a contrary intention.” In other words, because the reason for the general rule is to create the inference which is more nearly calculated to effectuate the intention of the parties, where the circumstances surrounding the transaction themselves manifest a contrary intention, there arises a corresponding shift of the burden of proof; and, absent any evidence of intention of the parties, the payor’s claim of resulting trust fails.
Admittedly, the exception in § 441 is expressed in broad, general language: “ . . .if the person by whom the purchase price is paid manifests an intention that no resulting trust arise.” But the Restatement does not end there; its Official Comments delineate various fact situations characteristic of such manifestations of intent. “Comment e” (where one person pays the purchase price and has the conveyance made to himself and another) poses the identical facts here presented.
Similarly, the reason for the exception is as clear and sound as is the reason for the general rule to which this exception applies. The unjust enrichment factor, which influenced the courts in evolving the rule of presumption in favor of resulting trusts, most often found its expression in the context of the multitude of various motives for taking title solely in the name of another without intending a gift. When weighed in the balance of ordinary human experience, a gift to the joint grantee emerges as the more probable intention of the payor where he takes title jointly in himself and another. Moreover, except for the most compelling of public policy reasons, the law should sanction only the narrowest of avenues available to those who seek to impugn the validity of a properly executed legal document.
*113 Thus, the presumed intention is reversed; and, under the circumstances on the instant appeal, the burden of proof is placed upon Appellee to prove by clear and convincing evidence that at the time he took title in himself and Appellants’ father, no beneficial gift was intended. Having failed to meet this burden, Appellee cannot sustain the judgment imposing a resulting trust in his favor. Accordingly, the final decree of the trial Court is reversed and this cause is remanded.
REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX and SHORES, JJ., concur.
BEATTY, J., concurs in the result.

. Professor Scott was the reporter for the Restatement and his earlier work on trusts was cited with approval by this Court in Hooks v. Hooks, 258 Ala. 427, 63 So.2d 348 (1953).

. See Cole v. Adkins, 358 So.2d 447 (Ala.1978).

. It should be noted that there is a distinction between a “gratuitous conveyance” and the later practice of the payor purchasing land in the name of another. In the former practice, the grantor conveyed title to another without consideration; while in the latter, the payor furnished the money and title was conveyed to another from a third party.