This case involves an alleged oral agreement to purchase certain real property and a building on that property for commercial use. On June 14, 1995, Alabama Exterior Supply, Inc., and Sharon A. Crutchfield (hereinafter collectively referred to as "the sellers") sued Capitol Construction Company and Cecil Pugh (hereinafter collectively referred to as "the buyers"), alleging, among other things, that the parties had entered into a "land installment contract" whereby the buyers had agreed to purchase the property and the building for an amount of $2,000 per month for 10 years, with no interest; that the buyers took possession in September 1993, and had begun making the $2,000 payments;[1] that the buyers have continued to occupy the property, but have failed to make payments, despite repeated requests to do so; that the buyers have failed to reimburse the sellers for payments they made to insure the property; and that the buyers have failed to pay the property taxes related to the property.
The sellers requested that the trial court declare the buyers in breach of contract, award damages, and order the buyers to return possession of the property to the sellers. The buyers answered and counterclaimed, alleging that the terms of the agreement were not as the sellers specified in their complaint; that they had not defaulted on the agreement; that the sellers had breached the agreement; that the buyers had made substantial payments toward the purchase of the property; that they had made substantial improvements to the property in reliance on the purchase agreement; that due to the sellers' breach of the contract, the buyers had suffered financial losses and damage to their business reputation; and that the sellers "having no intent to honor said purchase agreement . . . fraudulently misrepresented that they would be bound by the terms of the agreement." The buyers requested compensatory and punitive damages.
Following a nonjury trial, the court held that the parties did not have an enforceable contract because there was no mutual assent and because the agreement violated § 8-9-2, Ala. Code 1975, the statute of frauds, which provides that certain agreements are void unless they are reduced to writing. It also found that the sellers were not guilty of any fraudulent misrepresentation and that the *Page 1089 
buyers were not entitled to damages, because they had had the use of the property in exchange for the money paid to the sellers. Further, the court ordered the buyers to transfer possession of the property to the sellers. The buyers appeal, contending that the court erred in finding that there was no fraudulent misrepresentation by the sellers. The sellers cross-appeal, contending that the court erred in failing to find that there was a valid contract that the buyers had breached and in failing to order the buyers to pay the past due monthly payments and an amount to reimburse the sellers for the costs of insurance and prorated taxes.
The property that is the subject of the controversy consists of a commercial building and an unspecified amount of land contained within a parcel of land owned by Sharon Crutchfield. The parcel also contains additional commercial warehouse/office buildings. The land is subject to a vendor's lien in favor of the vendor who sold the parcel to Ms. Crutchfield. The only writings that allegedly memorialize the agreement between the buyers and the sellers are two unsigned amortization schedules prepared by Cecil Pugh's wife[2]; these schedules conflict with the sellers' averment in their complaint that there was to be no interest charged on the sale.
The record tends to show that in August or September 1993, a representative of Sharon Crutchfield and a representative of Capitol Construction Company allegedly orally agreed that Capitol would purchase the building and land at a price of $2,000 a month for 10 years. Following this agreement, Capitol moved its business into the building and began operating. It appears that Capitol was also allowed to use part of a warehouse that was located on another part of the parcel owned by the sellers, but that was not included in the purchase agreement. Capitol, at an expense of no more than $6,000, and with Ms. Crutchfield's approval, modified that warehouse to suit its needs. There is also evidence suggesting that Capitol provided the concrete for the construction of another building on the sellers' parcel. Most of the other terms of the oral agreement are in dispute. There is conflicting evidence as to whether the purported sale was a "land installment" contract, in which case a deed was not required to be delivered to Capitol until fulfillment of the terms of the contract (seeHalstead v. Windsor, 662 So.2d 1124 (Ala. 1995) (a land installment contract, also known as a bond for title, is an arrangement where generally the property is conveyed after the purchaser pays the complete purchase price)), or whether the sale was a basic real estate sale that required immediate delivery of a deed. In any event, Capitol never received a deed to the property, and the alleged agreement or a description of the property was never reduced to writing.
We will first address the sellers' contention that a valid contract existed. The trial court was the trier of fact; therefore, its judgment is presumed correct. Huprich v. Bitto,667 So.2d 685 (Ala. 1995). The court found that there was no enforceable contract between the parties because there was no mutual assent and because the contract was not reduced to writing, in violation of § 8-9-2. "The basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." Pinyanv. Community Bank, 644 So.2d 919, 922 (Ala. 1994). Although the sellers contend that there was a valid contract, the record shows that the buyers thought that the agreement called for the immediate delivery of a deed, and the sellers thought that the agreement was a land installment contract. We cannot say that the trial court committed reversible error in finding that no mutual assent existed between the sellers and the buyers. Therefore, we need not address the sellers' argument that the court erred in failing to hold that the buyers' taking possession and making payments took the transaction out of the statute of frauds. Further, although the record shows that the buyers paid some money toward the property taxes on the entire parcel, they disagree with the sellers as to the amount they agreed to pay and whether there was an agreement concerning the payment of insurance premiums. Therefore, we *Page 1090 
cannot say that the court erred in holding that the sellers' request for reimbursement of insurance costs and property taxes is without merit because of the lack of mutual assent.
The buyers contend that the court erred in denying their claim alleging misrepresentation. They argue that they proved either fraudulent misrepresentation or promissory fraud.
 " 'The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim such as that at issue here, that is, one based upon a promise to act or not to act in the future, two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive. Furthermore, "[t]he failure to perform a promised act is not in itself evidence of intent to deceive at the time a promise is made. If it were, the mere breach of a contract would be tantamount to fraud." ' "
Kline v. Resort Investment Corp., 547 So.2d 495, 497 (Ala. 1989) (citation omitted).
 "The presence or absence of actual fraud is a question for the trier of fact. Because fraud is a factual question, and because the trial court tried this case ore tenus, this court will indulge all favorable presumptions to uphold that court's decision. Absent plain error or manifest injustice, the trial court's findings of fact will not be disturbed on appeal."
Coghlan v. First Alabama Bank of Baldwin County, N.A.,470 So.2d 1119, 1122 (Ala. 1985) (citation omitted.) As noted earlier, there is conflicting evidence concerning when the deed was required to be transferred. The buyers base their fraud or promissory fraud claim on the facts that they never received a deed from the sellers and that there was an undisclosed vendor's lien on the property. They argue that the sellers never intended to deliver a deed. Because the evidence is inconclusive as to the agreed-upon timing of the delivery of the deed, the court did not err in finding that the sellers did not misrepresent this fact to the buyers. As to their claim concerning the undisclosed vendor's lien, the buyers argue that because the vendor's lien prohibited the sale of the property without the vendor's written consent, they proved that the sellers never intended to transfer the deed to them. The sellers, however, correctly point out that the vendor's consent could not be unreasonably withheld and the buyers presented no evidence that such consent would have been, or was, withheld. Additionally, we note that during the trial, the sellers offered to deliver a deed immediately, if the buyers could produce the purchase price.
Finally, notwithstanding the fact that there was no contract between the parties, the buyers occupied the property and even subleased portions of the property for 14 months without making payments after the dispute with the sellers occurred. The sellers requested compensation for this period and presented uncontroverted testimony that the fair market rental value of the property is $2,000 per month. It is unclear from the trial court's order whether it addressed the sellers' contention that the buyers owe them $28,000 for the 14 months the buyers occupied the property without making any payments. Therefore, we must remand this case for the court to determine whether the sellers are entitled to remuneration for that additional 14 months. See Rules 15(b) and 54(c), Ala. R. Civ. P. The court is directed to make this determination and to make a due return to this court within 42 days.
AFFIRMED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE and CRAWLEY, JJ., concur.
[1] The buyers made 15 payments.
[2] The second schedule was created by Mrs. Pugh, who owns 50% of Capitol Construction Company, when she learned that the interest calculation method in the first schedule was incorrect. *Page 1091 
[EDITORS' NOTE: PAGES 1091 — 1102 CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.]
 *Page 1