833 So.2d 58 (2002)
Louise DAVIS and Lucious Davis
v.
Willie James BARNFIELD.
2001218.
Court of Civil Appeals of Alabama.
April 19, 2002.
*60 James M. Barnes, Jr., Marion, for appellants.
Robert H. Turner, Marion, for appellee.
YATES, Presiding Judge.
Louise Davis and her husband, Lucious Davis,[1] appeal from a judgment in favor of Willie James Barnfield concerning a division of land pursuant to an oral contract. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
Louise Davis, Willie Barnfield, and Beatrice Barnfield are siblings. In 1992, Louise purchased a plot of land for $12,000. Willie accompanied Louise to the bank on the day of the purchase, and withdrew $5,000 from his personal account to pay the down payment on the real estate. He also withdrew $250 to pay for the deed. Willie co-signed the installment note with Louise and Lucious, and the *61 settlement statement relating to the loan. The terms of the loan included a monthly payment of approximately $190. Only Louise's name appears on the contract for sale and the warranty deed.
Louise was not in possession of the land before the purchase, but subsequently, moved onto the land. Willie and their mother had lived on the land, in their own house. Willie had been leasing a house on the land for six or seven years preceding the purchase. After the purchase, Willie made five payments of approximately $190 each to Louise. There is no testimony in the record to indicate that the nature of Willie's possession changed after the purchase.
At the time of the purchase in 1992, Beatrice lived in Indiana; she subsequently moved her mobile home onto the land, at Louise's invitation. In 1995, Beatrice began making payments to Willie. She testified that she believed that he was making payments on the land for the three siblings. Beatrice kept a record of the payments made from March 10, 1995, to July 9, 1997, totaling $4,935.
The testimony was disputed. Louise testified that on five occasions, Willie gave her $190, and that Beatrice gave her no money. Although Louise claimed that Willie did not give her the money from Beatrice, Willie testified that he gave the money to Louise, and that he had accompanied her to the bank to deposit it each time he had given her a payment. Between them, including the down payment, Willie and Beatrice claim to have paid $10,885over 90% of the purchase price. Louise asserts that she and her husband, Lucious, paid all but the $5,000 paid by Willie as a down payment and the five payments of $190.00 from Willie.
Louise testified that she told Willie he had a home for the remainder of his life and that she expected no money in return. Willie claims that Louise never told him he had a "life home." Louise also testified that she promised to give some land to Beatrice, but that she did not ask for any money in return.
On October 6, 2000, Willie sued Beatrice, Louise, and Lucious for partition of the land and division of the proceeds. On November 10, 2000, Louise and Lucious moved to dismiss. After a hearing, the trial court found that a tenancy-in-common existed among the three siblings, that each possessed an undivided one-third interest in the property, and that the property could be divided without a sale. The court further ordered that Willie contact a licensed surveyor to partition the property, dividing it equitably in such a way as to protect the house site of each party. The court ordered that the necessary instruments of conveyance be executed, with each party sharing the associated costs equally, and bearing their own attorney fees and costs. Louise and Lucious appeal from that judgment.
The trial court is the trier of fact, and its judgment based on its findings of fact is presumed correct. Capitol Constr. Co. v. Alabama Exterior Supply, Inc., 696 So.2d 1087, 1089 (Ala.Civ.App.1997), citing Huprich v. Bitto, 667 So.2d 685 (Ala.1995). Based upon the record, we find that there was sufficient evidence to support the court's factual finding that an oral contract existed between the parties.
The law clearly states that all contracts for the sale of land must be in writing, or they are void under the Statute of Frauds. § 8-9-2, Ala.Code 1975. There are two circumstances where an oral contract for real property will be enforced: where a party partially performed and took possession of the property, or where fraud existed from the inception of the *62 agreement. Darby v. Johnson, 477 So.2d 322, 326-27 (Ala.1985).
To satisfy the Statute of Frauds, a writing may consist of a note or memorandum. Id. Willie argues that the settlement statement and loan papers he signed could be considered a note or memorandum within the Statute of Frauds, and that the agreement would, therefore, be enforceable. However, those writings do not contain the essential elements of the alleged oral agreement, namely, an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement; therefore, they would not constitute a note or memorandum under the Statute of Frauds. See Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993); Capitol Constr. Co. v. Alabama Exterior Supply, Inc., supra.
There is only one statutory exception to the provision of the Statute of Frauds relating to contracts for the purchase of land. If "purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller," then the transaction is excepted from the Statute of Frauds. § 8-9-2(5), Ala.Code 1975. Possession must stem from the alleged agreement, and must be a result of the agreement; in other words, possession must be "`referable exclusively to the contract.'" Smith v. Smith, 466 So.2d 922, 924 (Ala.1985), quoting Hagood v. Spinks, 219 Ala. 503, 504, 122 So. 815, 816 (1929). Louise and Lucious argue on appeal that neither Willie nor Beatrice took possession of the land in reliance upon an oral agreement.
In Smith, twin brothers owned adjacent plots of land. One brother conveyed his property to the other brother, with the understanding that the other brother would use the land to secure financing to purchase another plot of adjacent land. The first brother alleged that the second brother agreed to then convey to the first brother a one-half interest in each of the original two properties, so they each would own equal shares of the properties. Smith v. Smith, 466 So.2d at 923. The first brother testified that before the oral contract, he "farmed the land, cleared stumps, put in a temporary road, cleared a site for a lake, cut timber, maintained fences, `ran' cattle, and hunted on the land." Id. at 926. The first brother testified that after the alleged oral contract, he measured and marked the boundaries of the land he claimed, "grazed cattle on the land periodically, granted permission to third parties to hunt on the land, and cut timber on the land." Id. at 925-26. The supreme court found that the first brother's possession was substantially the same before and after the conveyance. Furthermore, the supreme court found that the relationship of parties could account for the first brother's occupancy of the land. Id. at 926; see also Nelson v. Miller, 479 So.2d 1225, 1226 (Ala.1985). The Smith court speculated that a brother might allow other brothers to possess land without intending to convey ownership, based upon their familial relationship. Smith v. Smith, 466 So.2d at 926.
"`[T]he possession must be referable to the promise and not to some domestic relationship of the vendor and vendee. Where the person having the legal title to land is in possession, it is well established that such possession will be referred to the legal title. Here, the title being in the father, and both father and son being in possession, the law refers the possession to the father. (Citations omitted.)'
". . . .
"`... If the possession ... could be accounted for just as well by some other right or title actually existing in the vendee's favor, or by some relation between *63 him and the vendor other than the alleged oral contract, it is not such a possession as the doctrine requires.'"
Id. at 925 (citations omitted) (quoting Jones v. Jones, 219 Ala. 62, 64, 121 So. 78, 78, 79 (1929)).
In the present case, as in Smith, Willie's possession of the land did not change after he entered into the oral contract. He had lived on the land for six to seven years before the purchase, and he continued to live on the land after the purchase. There is no evidence indicating that his possession of the land was "referable exclusively to the contract." 466 So.2d at 924. Furthermore, his possession could be accounted for by virtue of his family relationship with Louise, as was the case in Smith. Although it might be argued that Beatrice took possession of her portion of the land after the parties had entered into the oral contract, her possession likewise could be attributed to a familial relationship. Therefore, neither Willie nor Beatrice meets the performance-possession exception to the Statute of Frauds.
In response to Louise and Lucious's arguments on appeal, Willie argues that equity demands that the oral contract be enforced, because, he says, Louise's actions constitute fraud.
"`"It is a most important principle, thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud, or in the consummation of a fraudulent scheme." 2 Pomeroy, Eq. Jur. (3d Ed.) § 921, p. 1658.'"
Darby v. Johnson, 477 So.2d at 325 (quoting Deming v. Lee, 174 Ala. 410, 414, 56 So. 921, 922 (1911)). However, in order to defeat the Statute of Frauds, the claimant must show fraud, not merely a breach of an oral contract. Darby v. Johnson, 477 So.2d at 326-27. In Darby, two neighbors, who were close friends, entered into an oral agreement. Johnson sought to have the court enforce that agreement. Johnson entered into a written agreement with Darby pursuant to which Darby assumed Johnson's indebtedness on the land in question in return for Johnson's conveying a warranty deed to Darby upon complete payment of the debt. Id., at 323. Johnson alleged that Darby agreed to reconvey the parcel to Johnson or her children if he were reimbursed for his payments. Id. at 324. "Both parties and several witnesses testified to the existence of this agreement to reconvey." Id. Darby refused to reconvey the property, and Johnson argued that equity should intervene, because Darby admitted to the oral agreement. Id. at 324. The supreme court stated that equity intervenes
"when fraud operates from the beginning [of the agreement]that is, when the breaching party procured the land or purchase money with no intent to perform the oral agreement admitted to have been made. The cases further require that this fraud be clearly shown. Equity will not intervene when the party merely refuses to perform. To do so would render the Statute of Frauds a nullity in that the Statute is usually raised only when one of the parties breaches the oral agreement."
Darby v. Johnson, 477 So.2d at 326-327.
The court concluded in Darby that the evidence submitted established an oral agreement, "but the law as applied to the agreement prevents the court's enforcing the oral agreement because it is void under the Statute of Frauds." Id., at 327. In the present case, the trial court had *64 sufficient evidence from which to conclude that an oral contract existed. However, there is insufficient evidence to show that fraud existed at the time the oral agreement was made.
In order for the trial court to find that the siblings had an undivided one-third interest in the property, it obviously imposed a constructive trust.[2] A constructive trust may be found when the funds of one party are used to purchase land, but title to the land is taken in the name of another party. A constructive trust is related to an express trust in the same way a quasi-contract is related to a contract. An obligation is imposed not because of the intention of the parties but to prevent an unjust enrichment. Jordan v. Mitchell, 705 So.2d 453, 461 (Ala.Civ. App.1997). A constructive trust may be found only where a fraud or an inequity demand a result that may not be had at law. Rau v. Rau, 429 So.2d 593 (Ala.Civ. App.1982). It must be inequitable to allow the one who holds it to retain the property. Brothers v. Fuller, 607 So.2d 135 (Ala. 1992).
"`"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."'"
Brown v. Brown, 604 So.2d 365, 370 (Ala.1992)(quoting American Family Care, Inc. v. Irwin, 571 So.2d 1053, 1058 (Ala. 1990), quoting in turn Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, 380 (1919)).
Where evidence is presented ore tenus, a presumption of correctness exists as to the court's findings of fact; its determination will not be disturbed unless clearly erroneous or manifestly unjust. Herston v. Austin, 603 So.2d 976 (Ala.1992)(following ore tenus proceedings the trial court correctly concluded that a constructive trust was appropriate because it would be unjust for the son to keep the certificate of deposit and other moneys transferred to him for the benefit of his mother); Kite v. Kite, supra, (the imposition of a constructive trust upon property was supported by the evidence in a divorce case where equity would not allow the husband to retain a property interest in property deeded to the mother-in-law, the husband, and the wife, for sole purposes of aiding the husband and wife in obtaining a loan).
"A constructive trust is a creature of equity which operates to prevent unjust enrichment. When a trial judge exercises his equitable discretion and imposes a constructive trust, we will not disturb his decision unless it is clearly erroneous.... `The issue of whether or not a constructive trust results is one of fact and ... when the evidence is [presented] ore tenus the trial court's finding of fact will not be disturbed unless it is clearly erroneous or manifestly unjust.'"
Holman v. Kruk, 485 So.2d 715, 716 (Ala. 1986) (citation omitted).
In Hall v. Hall, 587 So.2d 1198 (Ala. 1991), the estate of L.C. Hall, Sr., sued his son seeking the imposition of a constructive trust on the home that the son had purchased for the father, but that was in the son's name. The father gave the son *65 $35,000 for the purchase of the home, with the understanding that title to the house would initially be in the son's name, but would later be deeded to the father. The son did not respond to the complaint, and the trial court entered a default judgment awarding a general warranty deed in the property to the estate, as well as $50,000 in punitive damages and $8,000 in attorney fees. The son filed a Rule 60(b), Ala. R. Civ. P., motion to set aside the judgment, which the trial court denied, and the supreme court affirmed the trial court's judgment. In Hall, the father had paid a lump sum up front for the home; in the present case, Willie made a $5,000 down payment and paid $250 for the deed, and Beatrice made payments over time, but both cases rely upon an underlying oral agreement that the court enforced through the imposition of a constructive trust.
In Putnam v. Putnam, 274 Ala. 472, 150 So.2d 209 (1963), the wife purchased property with moneys from a joint bank account; although it was a joint account, the moneys in the account were exclusively from the husband's income. The deed was in the wife's name only, but she understood that her husband could be added later as a joint tenant. Subsequently, the parties divorced and the wife sold the property, which remained in her name only. The supreme court found:
"In purchasing this property, Mrs. Putnam was acting as the agent of her husband so far as his interest was involved. She was intrusted with the management and purchase. It was distinctly understood, according to the testimony of [the] complainant and the admissions of Mrs. Putnam on the trial of this case, that the transfer of the property was to be for the benefit of both. It was her duty to have had the conveyance made to both, or if to herself alone for any reason, then to have had a trust in his favor distinctly declared in the conveyance.... Whether intentional or not, Mrs. Putnam violated the confidence accorded her in closing the transaction to the exclusion of the interest of the complainant."
274 Ala. at 476, 150 So.2d at 213.
The supreme court in Putnam went on to hold that the husband was entitled to have a trust imposed on the proceeds of the sale, and it reversed the trial court's judgment denying the husband that relief. Although the couple in that case was married, that case is analogous to the present case in several important aspects. First, the parties were related in a way that would account for the husband's joint possession of the land. Second, his interest in the property was based on an understanding that could only be construed as an oral agreement. Finally, the husband provided the money for the payments on the property.
In Jordan v. Mitchell, supra, 705 So.2d 453, a husband and wife resumed living together after they were divorced. The ex-wife funded the building of a house on property that belonged to the ex-husband. The trial court refused to impose a constructive trust for the value of the improvements. This court held that a constructive trust may be impressed upon property when the grantee of the property has abused a "confidential relationship" with the grantor. There is no presumption that a confidential relationship exists between unmarried coinhabitants. Rather,
"A confidential relationship exists when `confidence is reposed by one party in another, and the trust or confidence is accepted under circumstances which show that it was founded on intimate personal and business relations existing between the parties, which gave the one [advantage or] superiority over the other.' Kite v. Kite, 444 So.2d 863, *66 865 (Ala.Civ.App.1983)(quoting Cannon v. Gilmer, 135 Ala. 302, 304-05, 33 So. 659, 659 (1903)). Once a confidential relationship has been shown, `[t]he burden of proving that the transaction was fair and righteous is on the one receiving or acquiring the benefit.' Id."
705 So.2d at 461. We held that the ex-wife was not entitled to a constructive trust, because she failed to prove that a confidential relationship existed between her and her ex-husband. The ex-husband did not actively induce her to contribute to the improvements, and the ex-wife did not rely on any promise that the ex-husband would remarry her or share the property with her. Also, this court found that if either had a superior position with regard to financial matters, it was the ex-wife, because she handled the finances while they were cohabiting.
In contrast to Jordan, a confidential relationship existed in the present case, because the parties were siblings, and there was evidence that Louise was to purchase the land for the three of them. Louise abused that relationship when she accepted the down payment from Willie and the payments from Beatrice, and then deeded the property in her name alone.
The dissent relies on Morgan v. Tate, 445 So.2d 273 (Ala.1984). However, Morgan is distinguishable from the present case. In Morgan, the plaintiffs sought reformation of a deed based on a mistake of law. The plaintiffs were siblings, and they conveyed property to their unmarried sister with a life estate to their mother. The mother died. Subsequently, the sister married. The sister then died, and her husband stood to inherit the property based on a change in the law of descent and distribution. The plaintiffs argued that because of their relationship with their sister, they "could have urged [the sister] to write a will leaving the property to them after she married or after the law of descents changed." 445 So.2d at 275. In response to this argument as to what the plaintiffs could have done, the court stated: "Equity aids the diligent, not those who negligently fail to take advantage of a remedy." Id. In the present case, Willie and Beatrice paid Louise with an expectation that she was purchasing the property for the three of them. In contrast, the plaintiffs in Morgan failed to take any action and were relying on what they could have done.
The Morgan court also distinguishes that case from Cole v. Adkins, 358 So.2d 447 (Ala.1978), in which the court had established a constructive trust. In Cole, the transferor expected his mother to reconvey the property by deed or will; therefore, a constructive trust was imposed. In Morgan, the plaintiffs were not expecting the sister to take any action to reconvey the property. Therefore, the Morgan court held that reformation of the deed was not available to change the deed to grant only a life estate to the sister.
Based on the foregoing, it would be inequitable for title to the property to remain only in Louise's name. Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
THOMPSON and PITTMAN, JJ., concur.
CRAWLEY and MURDOCK JJ., dissent.
CRAWLEY, Judge, dissenting.
I agree that the statutory part-payment exception to the Statute of Frauds does not apply in this case. See § 8-9-2(5), Ala.Code 1975; West v. McKay, 225 Ala. 397, 143 So. 573 (1932). I also agree that there was insufficient evidence to indicate that Louise Davis was guilty of fraud at *67 the inception of the alleged oral agreement she entered into with her brother Willie and her sister Beatrice. See Darby v. Johnson, 477 So.2d 322 (Ala.1985). I disagree, however, that the alleged oral agreement can be enforced by means of the imposition of a constructive trust. See Jordan v. Mitchell, 705 So.2d 453 (Ala.Civ. App.1997).
The only possible ground for imposing a constructive trust in this case would be the abuse of a confidential relationship, and there was no evidence indicating that Louise Davis and her two siblings had such a relationship. The mere fact that they were siblings is not enough. See Jordan v. Mitchell, 705 So.2d at 461 (stating that a confidential relationship "is not established merely by proof that the parties had a `close and affectionate' connection").
"A confidential relationship exists when `confidence is reposed by one party in another, and the trust or confidence is accepted under circumstances which show that it was founded on intimate personal and business relations existing between the parties which gave the one [advantage or] superiority over the other.'"
705 So.2d at 461 (emphasis added) (quoting Kite v. Kite, 444 So.2d 863, 865 (Ala.Civ. App.1983)) (bracketed material added by the court in Jordan v. Mitchell.)
"`Relevant facts to be considered include the degree of kinship, as well as disparity in age and business experience, and the extent to which the allegedly servient party entrusts the handling of his or her business and financial affairs to the other.'"
705 So.2d at 461-62 (quoting Edwards v. Miller, 61 Ill.App.3d 1023, 1027, 19 Ill.Dec. 82, 85, 378 N.E.2d 583, 586 (1978)).
In Morgan v. Tate, 445 So.2d 273 (Ala. 1984), the supreme court explained that a confidential relationship
"includes the situation `where, because of family relationship or otherwise, the transferor is in fact accustomed to be guided by the judgment or advice of the transferee or is justified in placing confidence in the belief that the transferee will act in the interest of the transferor.'"
445 So.2d at 275 (quoting Cole v. Adkins, 358 So.2d 447, 449 (Ala.1978)) (emphasis in Cole. )
In the present case, there was no evidence indicating that Willie and Beatrice had habitually entrusted Louise with the handling of their financial affairs, or that they were accustomed to being guided by her business judgment, or that they reposed such confidence in her that she had thereby gained an advantage or superiority over them.
The evidence indicates that Willie was present at the loan closing, that he paid to have the deed prepared, and that he was awarefrom the beginningthat his name was not on the deed. When he was asked at trial why his name was not on the deed, Willie did not say, "I don't know; I trusted Louise to do right by me." Instead, he replied, "That's what I wanted to know, why it wasn't on the deed." If Willie thought he and his sister Beatrice were buying the property equally with Louise, he could have demanded that he (or they) be named as grantees. "Equity aids the diligent, not those who negligently fail to take advantage of a remedy." Morgan v. Tate, 445 So.2d at 275.
Beatrice testified that her dealings as to the purchase of the property were solely with Willie. She said that she never even talked to Louise about buying the land. Willie and Beatrice did not establish with Louise the existence of a "confidential relationship," as that term has been defined by our cases. Therefore, they were not *68 entitled to have a constructive trust imposed upon the property for their benefit.
NOTES
[1] Lucious is named as an appellant in this case. Although Lucious cosigned a bank loan on the property, that loan has been repaid and is not an issue in this case. Only Louise is named in the contract for sale and the warranty deed. Therefore, Lucious has no apparent ownership interest in the property. However, no one raises the issue of whether Lucious is a proper party to this appeal.
[2] Although the trial court did not use the term "constructive trust," that is in effect what the judgment imposes. "If the ultimate decision of a trial court is correct, the judgment will be upheld even if for reasons other than those given by the trial court." Kite v. Kite, 444 So.2d 863, 865 (Ala.Civ.App.1983)(imposing a constructive trust without specifically stating so).