Melissa Adams Berryman appeals from a judgment entered by the Lauderdale Circuit Court imposing a constructive trust on life-insurance benefits she collected upon the death of her husband and awarding $59,764.46 of those benefits to Susan Adams on behalf of her two sons. We reverse and remand.
Richard Adams ("Richard") and Susan Adams ("Susan") were married; they divorced on May 21, 1996. Two sons ("the minor children") were born of the marriage. The judgment divorcing Richard and Susan provided that Richard was to maintain life insurance on his life for the benefit of the minor children. The divorce judgment provided, in pertinent part:
 "In Order to secure the payment of child support in the event of the death of [Richard], [Richard] shall maintain and keep paid up to date a policy of insurance on his life in a face benefit amount of $50,000, with the children named as irrevocable beneficiaries. The policy shall be delivered to [Susan] within 45 days of the date of this order. [Richard] shall send to [Susan] written proof of the renewal of the policy within 30 days before the policy's anniversary date during the children's minority. After the support obligation is ended, then [Susan] shall return the policy to [Richard]. The cash surrender or loan value of the policy shall not be obtained by [Susan] during the existence of the support obligation except by order of the Court."
At the time of the divorce, Richard had two life-insurance policies in effect. Both policies had been issued by State Farm Insurance Company, and each policy had a face value of $150,000 ("the original State Farm policies"); those policies named Susan as beneficiary and one of the minor children as contingent beneficiary. Following the entry of the divorce judgment, Richard provided the original State Farm policies to Susan. At trial, Susan testified as follows when asked about the fact that she and Richard went back to the court on one occasion following their divorce:
 "Q. [Berryman's Counsel:] Did you at that point demand that he give you a copy of the life insurance policies naming the children as irrevocable beneficiaries?
 "A. [Susan:] No. I did not demand anything he could give me, because I already had two copies of the policy itself in my possession.
 "Q. Did he ever deliver to you a policy naming the children as irrevocable beneficiaries within 45 days of the original decree?
"A. No, he did not.
"Q. And you didn't petition the Court? *Page 216 
 "A. I asked Richard about that, after the fact. And he told me that it was taken care of. That is all I knew was what he told me, because I already had the two policies in my hand."
Susan also testified that, to her knowledge, the original State Farm policies "were not replaced":
 "Q. [Berryman's Counsel:] Did [State Farm] ever send you any documents regarding [the original State Farm] policies in the mail?
 "A. [Susan:] . . . I never received anything from State Farm. I called and talked with Steve Pierce [a State Farm agent] regarding the policies.
 "Q. So you never received anything saying that those policies were in effect?
"A. No. I never received anything.
 "Q. Have you subpoenaed any documents that would reflect that those documents were no longer in force and effect?
"A. I don't know. Don't think so.
". . . .
 "Q. To you personal knowledge, those policies were not replaced?
 "A. To my knowledge, those were the original policies. They were not replaced."
Melissa Berryman married Richard on April 4, 1998. They mutually decided to purchase life insurance to cover the expenses, should one of them die, for a new house they were building. Accordingly, in 1998, Richard obtained a $150,000 policy from State Farm Insurance Company payable to Berryman ("the 1998 policy"). Berryman testified that she did not know whether the 1998 policy was a new policy or a replacement policy because she did not accompany Richard when he went to obtain the policy. Berryman also testified that the initial payment and the subsequent premium payments for the 1998 policy were drafted from her checking account.
Richard died on November 15, 1998. On December 16, 1999, Berryman received the $150,000 in proceeds from the 1998 policy. Berryman testified that she applied those proceeds to the expenses of building the house, as had been intended by Richard. The two minor children were not named as beneficiaries of the 1998 policy and did not receive any proceeds from it.
In December 1999, Susan's attorney wrote a letter to Berryman informing her that Susan believed the minor children were entitled to a portion of the proceeds of the 1998 policy. Berryman refused to pay any benefits to Susan. (Berryman eventually testified at trial that she had not known about her husband's insurance obligation to the minor children until after his death and that she had paid the premiums for the 1998 policy herself.) On August 29, 2000, Susan filed, as next of friend of the minor children, a suit against Berryman seeking to impose a constructive trust on the life-insurance proceeds that Berryman had received.
Berryman filed a motion for a summary judgment on August 31, 2001, which was denied by the trial court. A trial was held on February 22, 2002, at which evidence was received ore tenus. On March 21, 2002, the trial court entered its written final judgment imposing a constructive trust on the 1998 policy proceeds in the amount of $50,000 and awarding prejudgment interest from November 15, 1998, through March 14, 2002, in the amount of $9,764.46. Berryman filed a motion to alter, amend, or vacate the judgment on April 19, 2002; that motion was *Page 217 
denied by the trial court on May 2, 2002. Berryman appeals from the imposition of a construction trust as to the 1998 policy proceeds and the award of prejudgment interest.
 "A constructive trust is a creation of equity that operates to prevent unjust enrichment; such trust may be imposed when property interest has either been acquired by fraud, or where, in the absence of fraud, it would be inequitable to allow property interest to be retained by the person who holds it."
Rau v. Rau, 429 So.2d 593, 595 (Ala.Civ.App. 1982) (citingCoupounas v. Morad, 380 So.2d 800 (Ala. 1980)).
 "`When a trial judge exercises his equitable discretion and imposes a constructive trust, we will not disturb his decision unless it is clearly erroneous. . . . "The issue of whether or not a constructive trust results is one of fact and . . . when the evidence is [presented] ore tenus the trial court's finding of fact will not be disturbed unless it is clearly erroneous or manifestly unjust."'"
Davis v. Barnfield, 833 So.2d 58, 64 (Ala.Civ.App. 2002) (quoting Holman v. Kruk, 485 So.2d 715, 716 (Ala. 1986)).
Berryman contends that the trial court improperly imposed the constructive trust on the proceeds of the 1998 policy essentially arguing, among other things, that Susan did not demonstrate that the minor children had a vested equitable interest in the 1998 policy. Susan counters that the constructive trust at issue was properly imposed by the trial court, relying largely on the decisions of our Supreme Court in Williams v. Williams,276 Ala. 43, 158 So.2d 901 (1963), and Brown v. Brown,604 So.2d 365 (Ala. 1992). See also Frawley v. U.S. Steel Mining Co.,496 So.2d 731 (Ala. 1986) (relying on Williams), and Posey v.Prudential Ins. Co. of America, 383 So.2d 849 (Ala.Civ.App. 1980).
In Williams, the husband and his wife had two minor children. In the parties' divorce judgment, the trial court ordered the husband to change the beneficiary of a particular, then-existing $1,000 life-insurance policy (insuring his life) by naming the parties' minor children as the irrevocable beneficiaries thereof and to keep that policy in effect during the minority of the children. 276 Ala. at 45, 158 So.2d at 902. At the time of the divorce judgment, the policy named the wife as the beneficiary; pursuant to the divorce judgment, the husband changed the policy to name his children as the sole beneficiaries.
A few years after the parties were divorced, however, the husband again changed the $1,000 insurance policy, this time designating his mother as the sole beneficiary of the policy. Subsequently, when the husband died, the minor children (through their mother, the former wife) and the husband's mother both filed claims with the insurer seeking the proceeds due under the insurance policy. The insurer filed an interpleader action to obtain a determination as to who should receive the proceeds of the policy. The trial court held that the children were entitled to the proceeds of the policy and ordered that a constructive trust be placed on the proceeds.
In affirming the trial court, our Supreme Court held:
 "An agreement by an insured, in consideration of the settlement of property rights by which he agrees to make his children the sole irrevocable beneficiaries of a policy of life insurance, vests them with an equitable interest therein which may not be defeated without their consent, and the insured cannot defeat the equitable right of a beneficiary by failing to act. He could not, in equity, be allowed to take advantage of his own *Page 218 
wrong in breaching the property settlement and his estate is in no better position. . . .
". . . .
 "The legal consequence of the decree in the divorce suit was to give the children a vested equitable interest in the policy, and the subsequent change of beneficiary did not establish superior rights in the new beneficiary. In violation of the agreement and the decree, the insured wrongfully attempted to deprive his children of the proceeds of the policy
by an attempted change of beneficiary. Equity will intervene and declare them the beneficiaries in the policy."
Williams, 276 Ala. at 46-47, 158 So.2d at 903 (emphasis added).
Similarly, in Brown, 604 So.2d 365, a husband and wife were married in 1976 and had one child. During the marriage, the husband maintained two policies insuring his life, one through his employer and one with Liberty National Life Insurance Company. Each policy named the wife as its beneficiary. The parties divorced in 1978, and, under the divorce judgment, the husband was required to maintain those two policies and to
 "`assign to the minor child . . . and make him irrevocable beneficiary on the life insurance policy [the policy number] carried through his employer American Cast Iron Pipe Company ["ACIPCO"] in the sum of [$12,000]; Defendant shall also assign to the minor child and make him irrevocable beneficiary on the life insurance policy [the policy number] carried through Liberty National Life Insurance Company in the sum of [$15,000].'"
604 So.2d at 366. The husband was also required to continue paying premiums on the policies until the minor child reached the age of majority. The husband designated the minor child as the beneficiary under both policies soon after the divorce judgment.
Subsequently, the husband remarried and changed the ACIPCO policy by designating his second wife as the beneficiary thereof. He also allowed the $15,000 Liberty National policy to lapse, and he purchased a replacement policy from Alfa Insurance Company with a value of $25,000, again naming his second wife as the beneficiary. The husband died a few years later. The husband's first wife filed an action on behalf of the minor child, requesting that a constructive trust be placed on the proceeds of the two policies. The trial court imposed a constructive trust on all of the proceeds of the ACIPCO policy and on $15,000 of the proceeds of the Alfa policy.
Our Supreme Court affirmed the trial court's judgment, holding that the minor child had acquired a "vested equitable interest" in the ACIPCO policy, citing to Williams, supra.
604 So.2d at 367. The husband's second wife contended that the Liberty National policy had lapsed and that the minor child had no vested interest in the proceeds of the Alfa policy. The Supreme Court rejected this argument, finding that the evidence was clear that the Alfa policy was a replacement for the Liberty National policy because the husband had purchased the Alfa policy at the same time he allowed the Liberty National policy to lapse and because his second wife admitted in testimony that the husband intended it to be a replacement policy. Consequently, "[b]ecauseWilliams, supra, would require that [the minor child] receive the proceeds of the $15,000 Liberty National policy, if it were still in effect, the trial court acted within its equitable discretion in imposing a constructive trust on $15,000 of the $25,000 proceeds of the Alfa policy. . . ." 604 So.2d at 368. While the facts in Williams and Brown certainly are *Page 219 
not without some similarity to those in the present case, those cases are distinguishable from the present case. In Williams
and Brown, the divorce judgments identified particular, then-existing life-insurance policies as to which the children in those cases were to be named irrevocable beneficiaries. In both cases, the husband eventually either changed the beneficiary on the applicable policy so as to designate someone other than the child as the beneficiary or obtained a policy replacing the one specified in the divorce judgment, naming a different beneficiary on the new policy. The Supreme Court in Williams and in Brown
reasoned, therefore, that the children in those cases had obtained vested equitable interests in the particular life-insurance policies at issue. In contrast, neither the original State Farm policies nor the 1998 policy were specifically referenced in the judgment divorcing the parties in the present case.
Nonetheless, one might argue that, through his actions, Richard identified the original State Farm policies to the divorce judgment, thus laying the foundation for a claim that the children did acquire a vested equitable interest in those policies.[1] Even assuming the identification of the original State Farm policies to the divorce judgment, the fact remains that Susan is attempting to make a claim against the 1998 policy, not those original State Farm policies. Further, after careful consideration of the evidence presented in this case, we must conclude that that evidence is not sufficient to establish the same sort of relationship or connection between the 1998 policy and the original State Farm policies as existed between the Alfa policy and the Liberty National policy at issue inBrown. Instead, we find the state of the record in the present case to be more akin to that which was presented in the case ofRau v. Rau, 429 So.2d 593.
In Rau, a husband and wife were divorced in June 1971. The judgment divorcing the parties order the husband to "keep in force and effect a then existing life insurance policy on his life with the parties' minor children named as irrevocable beneficiaries. . . ." 429 So.2d at 594. The husband remarried in September 1971, and in 1976, after changing jobs and companies, his new employer took out a $10,000 insurance policy on his life. The husband named his second wife as the sole beneficiary of that insurance policy. The husband subsequently died in 1979, and his second wife received the proceeds of the employer-funded insurance policy. The husband's minor children, through their mother as next friend, filed suit against the second wife, claiming, among other things, ownership to $5,000 of the insurance proceeds paid to the second wife. The trial court found in favor of the children and imposed a constructive trust on $5,000 of the insurance proceeds paid to the husband's second wife, basing the decision squarely on Williams, supra.
This court reversed the trial court, finding that the evidence failed to support the result. Specifically, this court observed:
 "The evidence fails to identify the policy of insurance for $5,000 referred to in the agreement of the parties and the subsequent decree. There is no indication that it was a policy issued at the husband's place of employment. . . . [The former wife] did not know if the beneficiary was ever changed or whether the policy was issued through her husband's *Page 220 
employment — whether it was cancelled for nonpayment or lapsed when the husband left his then place of employment shortly after the divorce. She made no inquiries about it until after his death and learning that the children received nothing under his will.
"The present wife had no knowledge of the provisions of the divorce relating to insurance. She knew of no policy other than the $10,000 policy involved in this case which was not issued until 1976. . . . The premiums were fully paid by the employer. . . . The proceeds had been invested in real estate.
 ". . . [W]e are unable to find any property interest, either legal or equitable, of appellees in the proceeds of a policy of insurance which did not exist at the time of the decree of divorce. There is no evidence other than speculation as to the fate of the policy in which the appellees did acquire an equitable interest under the holding in Williams. There is no evidence that that policy was intentionally dropped and the present policy purchased in its place in order to fraudulently evade the children's interest and the court's decree.[2] To the contrary, it is undisputed that the policy here was issued as an employment benefit without cost to the father and at a time of some five years subsequent to the decree. There is no evidence of an unjust enrichment to the appellant of property which should equitably belong to appellees. No fraud can be ascribed to appellant. We therefore can find no basis in equity for attachment of a constructive trust to the proceeds of the insurance policy."
Rau, 429 So.2d at 595 (emphasis added).
In the present case, as in Rau, there is no evidence other than speculation as to the fate of the original State Farm policies. There is no evidence that the policies were intentionally dropped and the 1998 policy purchased in their place. (Indeed, as noted, Susan's testimony tends to indicate that the original State Farm policies were not replaced.) InRau, the policy in question was paid for by a third party without cost to the husband or to his former wife; in the present case, the policy in question was paid for by Berryman, herself, and not by Richard or Susan. Further, just as the second wife inRau had no knowledge of the husband's insurance obligation to his children under the divorce judgment, Berryman had no knowledge of Richard's obligation under the divorce judgment until after his death. As in Rau, we cannot find sufficient basis in the particular evidence presented in this case to uphold a finding of unjust enrichment or a finding that the minor children had a vested interest in the 1998 policy so as to justify the imposition of a constructive trust on the proceeds of that policy.
Among other things, Berryman also argues that Susan failed to demonstrate that there was not an adequate remedy at law for any financial harm suffered by the children. "A constructive trust may be found only where a fraud or an inequity demand a result that may not be had at law." Davis, 833 So.2d at 64 (citing *Page 221 Rau, 429 So.2d 593); see, e.g., American Family Care, Inc. v.Irwin, 571 So.2d 1053, 1061 (Ala. 1990). Berryman argued at trial, and points out in her brief on appeal, that Richard owned several properties at the time of his death that might be worth an amount sufficient to cover the $50,000 insurance obligation under the divorce judgment. In light of our disposition of this case on the above-discussed grounds, we pretermit consideration of this and other arguments raised by Berryman on appeal.
On the basis of the foregoing, the trial court's judgment imposing a constructive trust on the insurance proceeds received by Berryman is reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY and PITTMAN, JJ., concur.
THOMPSON, J., concurs in the result.
YATES, P.J., dissents.
[1] For purposes of our analysis, we further assume that Richard's failure to change the policies so as to designate both of the minor children as the beneficiaries thereof is not an impediment to the trial court's ability to find that both of the children had an equitable interest in those policies.
[2] It is true, as Susan points out in her brief to this court, that our Supreme Court "[did] not necessarily adopt all of the reasoning of the Court of Civil Appeals in Rau. The intent ofthe insured to evade the court order by replacing thecourt-ordered policy may not be as important as the fact of theviolation of the order." Brown, 604 So.2d at 368 (emphasis added). However, the Brown Court did not overrule Rau but, in fact, distinguished Rau from Brown in ways that mirror the differences between the present case and Brown, as discussed in the text, infra.